BRY-BLOCK MERC. CO. *v.* MRS. C. A. CARSON.

(*Nashville,* December Term, 1926.)

Opinion filed December 18, 1926.

WORKMEN'S COMPENSATION ACT. Purpose of enactment. Effect of death of injured employee. Widow or dependents.

The purpose of the act is to make industry take care of its casualties. To that end compensation is provided for injured workmen in lieu of wages. If employee die, from natural causes, his representatives have no claim against the employer. If the death results from injuries received in the industry, there are special provisions to take care of dependents. (Post, p. 272.)

Citing: Murphy's Case, 224 Mass., 592; Bartoni's Case, 225 Mass., 349 Duffey v. Morse Lbr. Co., 42 R. I., 260, 15 A L. R., 810; Heiselt Const., Co. v. Industrial Commission of Utah, 197 Pac., 589, 15 A. L. R., 799; Lahoma Oil Co. v. State Industrial Commission of Oklahoma, 175 Pac. 836; and cases collected in Note 15, A. L. R., 821.

Cases, contra, cited: Note 15, L. R. A., 821; cases resting upon peculiar, statutory provisions of other jurisdictions.

---

*As to survival of right to compensation under Workmen's Compensation Acts, upon the death of the person entitled to the award, see annotation in 15 A. L. R., 821; 24 A. L. R., 441; 29 A. L. R., 1426.

---

*Headnotes 1. Workmen's Compensation Acts, C. J., section 137; 2. Workmen's Compensation Acts, C. J., section 144; 3. Workmen's Compensation Acts, C. J., section 105 (Anno); 4. Workmen's Compensation Acts, C. J., section 82.

---

FROM SHELBY.

---

154 Tenn.—18.

Appeal in Error from Shelby Law Court of Shelby County.—HON. H. W. LAUGHLIN, Judge.

WILSON, GATES & ARMSTRONG, for appellant.

C. L. NEELY, for appellee.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

C. A. Carson, a carpenter, employed by the plaintiff in error, received an injury in the course of his employment. As a result of this injury, it was necessary to amputate a portion of his leg just above the ankle. The wound did not heal properly, gangrene set in, and a second operation, removing another portion of the leg, just below the knee, was required. The second operation was likewise unsuccessful, and after some months a third operation was performed, in which the leg was amputated above the knee. Following this operation, the stump apparently healed, but there was pain from some of the nerves. To relieve this pain, a fourth operation of a minor character, a slight incision into the flesh of the stump, was performed. About five or six weeks after this last minor operation, Carson died.

The plaintiff in error paid Carson $11 per week, according to the provisions of section 26, chapter 123, of the Acts of 1919, from the time he was hurt until the time of his death—as for the loss of a leg. It also paid medical and surgical expenses required by the act. It refused to make further payments to the widow of Carson after he died.

The widow accordingly brought this suit to recover as widow and dependent of Carson for his death resulting from an accident sustained in the course of his employment. Had the husband's death been so brought about, she would have been entitled to $11 per week for four hundred weeks, less the sum already paid to Carson. Her petition also prayed for alternative relief, if it should be found that the husband's death did not result from the accident. For the loss of a leg, the husband would have been entitled to $11 per week for one hundred seventy-five weeks. He has been paid for ninety-two weeks at the time of his death. The petitioner claimed that she, his widow, would be entitled to collect $11 a week for the eighty-three weeks remaining, if it should be determined that Carson did not die as a result of injuries received in the course of his employment.

The trial judge concluded that petitioner had failed to show that her husband's death was caused by the accident, and dismissed her petition in so far as it sought recovery as a dependent. He was of opinion, however, that the right of the husband, which he would have had if living, to collect $11 per week for eighty-three additional weeks, survived to the wife, and he so adjudged.

Both parties have appealed in error to this court.

No one was present when Carson died. He was naturally, and according to the testimony of his wife, feeble and run down as a result of the ordeal through which he passed. On the day of his death, he had eaten his lunch and lay down on the bed to take a nap as was his custom. His wife went out in town and was gone two or three hours. Some time after she had been away, Carson was found dead, lying across a chair in his house.

It would be necessary, to recovery by petitioner on the first theory of her case, to show that the immediate cause of her husband's death was the natural consequence of the injury he received in his employment, or of the operations following such injury. If he died from an independent or intervening cause, she would not be entitled to recover in this phase of her case.

The petitioner undertook to show that her husband died as the result of an embolism, that a blood clot or some foreign substance got into the circulation following some one of these operations, perhaps the last, and was carried to some vital spot, where it clogged an artery and produced death.

Much proof was introduced with respect to this contention. Without undertaking to detail it here, we are satisfied that the trial judge correctly found that a preponderance of the evidence was against this theory of the petitioner. Experts testifying for the plaintiff in error suggested several things that might reasonably have caused Carson's death—heart disease, acute indigestion, etc. The trial judge found that the proof failed to show that any of these things had occasioned Carson's death.

As the case comes to us, then, Carson's death is not explained. The only theory upon which the petitioner attempted to trace his death to the accident was rejected by the trial judge, and we must accept his finding of fact.

Upon the other branch of the case, it is insisted that Carson, having lost his leg in the course of his employment, was entitled to be paid the statutory compensation for one hundred seventy-five weeks, that this was a vested right, and upon his death the balance due passed to

his widow, the petitioner here. It was so held in the court below.

We think this holding cannot be sustained. If Carson had. a vested right at the time of his death to recover compensation for eighty-three additional weeks, if this was a debt due him, the right to collect this debt would have passed to his personal representative. The proof shows that he left two children. The widow was merely one of his distributees. There is no showing as to his indebtedness. Under such circumstances, no one of the distributees, nor all of them, could bring suit upon such a claim. It would have to be brought by Carson's administrator. *Hurt* v. *Fisher*, 96 Tenn., 570, and cases cited.

Beyond this, however, we are of opinion that Carson's right to receive compensation for eighty-three additional weeks died with him, and did not survive to any one. To this effect is the decided weight of authority. *Murphy's case,* 224 Mass., 592; *Bartoni's case,* 225 Mass., 349; *Duffey* v. *Morse Lbr. Co.,* 42 R. I., 260, 15 A. L. R., 810; *Heiselt Const. Co.* v. *Industrial Commission of Utah,* 197 Pac., 589, 15 A. L. R., 799; *Lahoma Oil Co.* v. *State Industrial Commission of Oklahoma,* 175 Pac., 836, and cases collected in Note 15 A. L. R., 821.

Reasons given in the cases are that it is the purpose of Workmen's Compensation Acts to make industry take care of its casualties. To that end compensation is provided for injured workmen in lieu of wages. Wages cease with death, and likewise compensation received in lieu of wages must cease with death. If the employee die from natural causes, his representatives have no claim against the employer. If the death results from injuries received in the industry, there are special provi-

sions to take care of the employee's dependents. It would put an additional burden on the employer, not contemplated by the statutes, to require him to pay either wages or compensation to representatives of an employee who died from natural causes. If an employee had a vested right in compensation, he could will it away, and the employer would be paying this substitute for wages to persons with whom he had no connection. These and other reasons seem to abundantly sustain the majority rule.

There are a few cases apparently to the contrary mentioned in the note 15 A. L. R., 821, but, upon investigation, they will be found to rest on peculiar provisions of statutes in those jurisdictions.

The judgment below must be modified, and this suit dismissed.