Home Ice Company *v.* Cenora Franzini.

(*Knoxville*, September Term, 1930.)

Opinion filed November 28, 1930.

T. POPE SHEPHERD and J. CLIFFORD CURRY, for plaintiff in error.

CHAS. S. COFFEY, for defendant in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is an appeal by an employer from an award made in a workmen's compensation case in favor of the widow and children of a deceased employee.

The Home Ice Company, the employer, operated an ice plant in Chattanooga. The deceased employee, Jack

Franzini, had been in its service for several years at the time of his death. He worked at night. It was his duty to sell ice over the platform to such people as wanted it and came to the plant at night. He was further expected to wash the wagons, look after the work stock, and to act as a sort of night watchman of the entire premises.

In the rear of the Home Ice Company's main building was a yard and on this yard a stable for the horses and mules and a blacksmith shop were located. The wagons were also parked there at night. The machinery in the plant was operated by electricity and there was a transformer tower likewise in the yard.

Franzini was last seen alive by the night engineer at the plant, about midnight. The engineer testified that Franzini came through the engine room and passed out into the back yard saying he was going to look after his brother-in-law who, it later appeared, was sleeping out there. The engineer testified that Franzini was gone some twenty minutes or more; that he (the engineer) began to wonder what had become of him and went out into the yard to see. He discovered Franzini's body, lying on the ground, at the foot of the transformer tower, apparently dead. The engineer gave the alarm and the superintendent of the plant and a physician came shortly. Franzini's body was very thoroughly examined by these two and by others.

Examination of Franzini's body disclosed that there was a deep burn through a part of his thumb and across the palm of his right hand. The physician described the flesh here as charred. On the left forearm there was a sort of blister, a burn described as a flash burn. There were likewise something like abrasions on this arm, which

may have come from the flash burn or may have been scratches.

Everyone agrees that Franzini met his death by an electric shock, the current passing into his body through the right hand and passing out through the left forearm. The burn on his right hand is indicated by all the proof to have come from a current of high voltage. One of the witnesses noticed white spots in this burn, which he said were indicative of such a current. While the doctor did not notice the white spots in the burn, his testimony indicates that the burn was deep, the flesh charred, and the burn of such a nature as to be caused by a powerful current.

Just how Franzini came in contact with the current of electricity that caused his death is not known. The defense to the claim before us is that his death was not occasioned by an injury arising out of his employment.

Franzini's duties took him all over the premises, as has been seen. It was expected that he should go out into this back yard during the night to look after the stock, to watch after the premises, and on occasions to wash the wagons, although on the night he was killed the washing apparatus was out of commission.

It is obvious that Franzini received the injury that caused his death after he passed through the engine room into the back yard. He was all right as he went out into the yard, some twenty minutes before the engineer found his body.

Shortly after the body was found the electric power company was notified of the accident and sent two men to look over the premises. The superintendent and others joined in this examination of the surroundings. No loose or hanging wire, no charged metal, nor any agency

that could have conveyed this electric current to Franzini's body was found within his reach on the yard or in the stables. The blacksmith shop, where a current of about 400 voltage was used, was locked. There was no current in the stables except the ordinary 110-volt current for the lights and, as before indicated, the body was not in the stables.

Wires carrying a current of 11,000 volts came into the transformer tower where the current was stepped down to a voltage proper for use in operating the machinery in the plant—about 400 volts. Contact with the high tension wires coming into the transformer tower could not be made except by getting upon the platform of the transformer tower or climbing the poles of the transformer tower to a height corresponding with the height of the platform. The platform was ten feet above the ground. These high tension wires were insulated but the expert witnesses who testified conceded that it might be possible to get a deadly shock from such wires, notwithstanding the insulation.

It is insisted on behalf of the Home Ice Company that Franzini could only have met his death by climbing up this transformer tower and thus coming in contact with the high tension wires; that there was no other way in which his death could have been occasioned. It seems to us that the great weight of the evidence, if not all the material evidence, sustains this contention. The only thing to the contrary is that the examination of Franzini's body disclosed no bruises, which it is said that he must have sustained had he been knocked off a ten-foot platform and fallen to the ground. There were, however, as have been noted, something like abrasions on his left forearm, which may have been caused by a fall.

General instructions had been issued by the Home Ice Company that its employees, such as the deceased, should avoid the machinery and electrical apparatus in the plant. Franzini had no duties to perform in connection with any of the machinery or electrical appliances. He had no duties which required him to climb the transformer tower. If he got up on the transformer tower, even though it be said that such an act was not in wilful disobedience of orders, nevertheless it was a departure from his employment and was not an act incident to his employment, and an injury received while on the tower did not arise out of his employment.

Any explanation of Franzini's death other than that he received a shock which killed him while on the tower, is purely conjectural and opposed to definite proof offered.' The blacksmith shop was locked. Very little of the machinery in the plant was being operated and proof indicates that if Franzini had come in contact with any live wire in the plant, a fuse would have been blown out. Nothing of the kind appeared. Besides, it seems almost beyond dispute that Franzini came in contact with a current which must have killed him instantly and his body was found in the yard.

If it be conceded that the death of Franzini is not explained, still we think there can be no award of compensation in this case. It was incumbent upon his beneficiaries under the statute to show that his death was occasioned by an accident arising out of and in the course of his employment. An award cannot be based on a bare conjecture of such facts. *Coal & Coke Co.* v. *Martin,* 155 Tenn., 34; *Bry-Block Mercantile Co.* v. *Carson,* 154 Tenn., 273.

█ This court has sanctioned the proposition that where an employee is found dead at his post of labor, without direct evidence as to the manner of his death, an inference may arise of an accident springing out of and in the course of his employment. *Shockley* v. *Produce & Ice Co.,* 158 Tenn., 148. As where the employee's body was found drowned in a pool on the working premises where he was expected to procure wash water at the close of his day's work. *Tennessee Chemical Co.* v. *Smith,* 145 Tenn., 533; or where the employee was found dead beneath a platform upon which it was his duty to work. *Tennessee Eastman Corp.* v. *Russell,* 150 Tenn., 327.

█ This presumption, however, could not be indulged when the cause of the employee's death was proven and it was further proven that such cause could not have operated in connection with any known detail of deceased's employment. Indeed, if upon undisputed proof, it is conjectural whether death resulted from a cause operating within his employment or a cause operating without his employment, there could be no award to the employee's dependents. *Coal & Coke Co.* v. *Martin, supra.*

It seems to us, therefore, that the petitioner has failed to show that the death of her husband was occasioned by an injury that arose out of his employment and has accordingly failed to make out her case.

Reversed and dismissed.