PETERS *v.* SALANT & SALANT, INC.

*(Nashville,* December Term, 1935.)

Opinion filed Jan. 12, 1935.

W. H. LINDSEY, of Lawrenceburg, for plaintiff in error.

J. E. TRAVIS, of Nashville, for defendant in error.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

The circuit court awarded Mrs. Peters compensation for the death of her husband, George Peters, as resulting from an accident arising out of and in the course of his employment.

The employer's appeal in error is supported by assignments which question the finding of causal connection between the accidental death and the employment.

The finding of the trial judge is that Peters was killed by an accidental discharge of a pistol in his own hands or possession, and there is evidence supporting this inference of fact.

The employer's contention is that the duties incident to Peters' employment did not require the possession or use by him of a pistol, and that he was not authorized to have one while engaged in his work on his employer's premises. The contention is that the accident was not one which the employer might have contemplated as a risk of its employment of Peters, and therefore not compensable under the Workmen's Compensation Law, as construed and applied in *Leonard* v. *Cranberry Furnace Co.*, 150 Tenn., 346, 265 S. W., 543, and *Home Ice Co.* v. *Franzini*, 161 Tenn., 395, 32 S. W. (2d), 1032.

An injury may be said to arise out of an employment when there is "a causal connection between the

conditions under which the work is required to be performed and the resulting injury;'' and also ''when it is something the risk of which may have been contemplated by a reasonable person when entering the employment as incidental thereto.'' *Hendrix* v. *Franklin State Bank*, 154 Tenn., 287, 290 S. W., 30; *Shockley* v. *Morristown Produce & Ice Co.*, 158 Tenn., 148, 157, 11 S. W. (2d), 900, 903.

The determinative question herein is therefore whether the nature of Peters' employment was such that he and his employer may have reasonably contemplated his possession and handling of a pistol in its execution. If so, the resulting accident was one arising out of his employment, as the statute is construed in the cases cited.

The death of Peters occurred in a building occupied by Salant & Salant, Inc., as a shirt factory, within the city limits of Lawrenceburg. The building was 400 feet long and 100 feet wide, and consisted of one main floor and a basement. It contained 110 machines, and a quantity of finished and unfinished merchandise. It was one of a number of factories operated by the employer in this and other states, and was in charge of Fred Shoemaker, as the employer's resident representative.

Mr. Shoemaker testified that he first employed Peters, who was thirty-three years of age, as a porter and janitor, working in the daytime; that with the approach of winter it became necessary to keep the building heated at night, and Peters' hours of work were from 5 P. M. to the arrival of the day man in the morning; that his duties were solely to clean the building and tend the furnace, with no responsibility of acting as watchman of the property. He further testified that when these hours of

work were assigned to Peters, the latter asked if he should carry a gun, and that he replied: "Any time the occasion should arise for a gun to be had in the building, I will provide one, putting one in the desk drawer."

The only material conflict in the evidence arises from testimony offered to impeach Mr. Shoemaker's version of the scope of Peters' employment and of his conversation with Peters about the pistol.

Witnesses testified that on the day following the death of Peters, Shoemaker said he had first employed Peters as a common laborer, but liked him and found him to be a good man, and "hired him as watchman;" that he had offered to let Peters have his gun the night before his death, but Peters had borrowed one and did not need his. A brother of Peters testified that Shoemaker said Peters had asked for the gun because he had heard some one at the basement window; that he told Peters he would leave it for him, but Peters later said he had one.

The county judge, before whom Shoemaker had testified on an earlier hearing of this controversy, repeated Shoemaker's testimony on that hearing as follows: "Mr. Peters made complaint of disturbance around there and he would like to have a gun, and Mr. Shoemaker said 'Well if you think you need a gun, or if it is necessary, I will leave one here for you in the drawer.' "

Peters had made for himself a pallet of rugs near the furnace, where he slept during a part of the night. His body was found several steps from the pallet, but his pistol, with one empty cartridge shell, was found on the pallet. There is no evidence that he was carrying the pistol on his person at the time he was killed. It is possible that he knocked against it in his sleep and discharged it.

From the uncontroverted facts, the trial judge concluded that while there was no direction from his employer that Peters should go armed, there was, of necessity, some discretion given to Peters to determine whether, in safety to himself and the goods in the building, he should be armed; that since he was the only employee on the premises during the night hours, there was an implied obligation on him to watch and care for the building and its contents, with the possibility that occasion would arise for the repelling of intruders by force.

It is our opinion that the facts support these conclusions. The employer's agent had affirmative knowledge that Peters contemplated having a weapon at hand, and gave no instructions that he should not do so. Accepting his testimony as true, his reply to Peters' inquiry indicated only that he would himself provide a pistol if necessary. There was in this reply no direct or implied instruction that Peters should not provide one for himself, if he desired to do so. Both from this conversation and from the fact that Peters was required to remain in the building alone through the night, we think the employer must have contemplated that he might have with him either a pistol or gun, as the trial judge observed, both for his own protection and the protection of his employer's property. If he called Mr. Shoemaker's attention to the fact that the place had been visited by intruders, as some of the testimony indicates, the probability and likelihood that he would arm himself was even more apparent.

We conclude, therefore, that the evidence sustains the finding of the circuit court that the act of Peters in arming himself in furtherance of his employment was within the contemplation of his employer, and that the

accidental discharge of the pistol, so acquired and provided, was a risk within the contemplation of the parties, with the result that the accidental death was one arising out of the employment.

Other assignments of error are that the circuit court erred in admitting as evidence in chief the testimony of admissions made by Mr. Shoemaker above referred to. It is contended that this testimony was competent only in rebuttal, as impeaching testimony, and that it was improperly admitted as evidence in chief.

The testimony disclosed admissions as to the nature and scope of the employment by the employer's responsible agent, and, as such, we think it was competent as evidence in chief and not merely as impeaching testimony. However, the findings of the circuit court indicate that its judgment was rendered for the petitioner without regard to the evidence in question, and its admission was therefore relatively unimportant.

We find no reversible error on the record and affirm the judgment.