Juan Buenaventura Quiñones Vega et al., Petitioners and Appellants, *v.* South Porto Rico Sugar Company of P. R. et al., Respondents and Appellees.

No. 6583. Argued March 14, 1935.—Decided April 10, 1935.

*R. Hernández Matos* for appellants. *F. Manuel Toro* for appellee South Porto Rico Sugar Co. of P. R.

Mr. Justice Córdova Dávila delivered the opinion of the court.

In this case the plaintiffs, as brothers and sole heirs of Jesús Quiñones Vega, a workman, requested a declaratory judgment, under Act No. 47 of 1931 (Session Laws, p. 378), upon the facts alleged in the petition, which were substantially held as proved by the lower court.

Jesús Quiñones Vega suffered an accident in June, 1931, while employed by the defendant South Porto Rico Sugar Co. On August 17 of the same year, the employer, with the consent of the laborer, submitted to the Industrial Commission of Puerto Rico a proposed settlement agreement for the sum of $438.49, which amount was fixed on the basis of a disability of 40 per cent in the use of the left arm of the workman, according to the report of the employer's physician. The commission received the said proposal, and without taking any step to approve or disapprove it, ordered an examination of the workman by the commission's physician Dr. Guzmán Soto, who estimated that the said workman "had lost 40 per cent of the use of his left arm from the shoulder down, which is the incapacity estimated by the insurance company." The commission, which had in its possession the

settlement agreement sent by the employer, decided to send a copy of the medical report to the said employer, in order that it might submit a settlement agreement according to the incapacity established in the same. The South Porto Rico Sugar Co. received this decision on January 19, 1932, and on January 29 wrote to the commission reminding it that on August 17, 1931, it had sent to the commission a proposed settlement agreement for the sum of $438.49, signed and approved by the workman Jesús Quiñones Vega, together with a check for the said amount in favor of the injured party Jesús Quiñones Vega. The employer stated that, since the proposed agreement was submitted to the consideration of the commission, there remained only for the latter to fix the amount of the compensation and to accept or reject the agreement submitted and, in case a lesser sum were fixed, to return the check in order that a new one for the exact amount of the compensation be issued. When this letter was written the death of Jesús Quiñones Vega, on January 21, 1932, had already occurred. The petitioners, brothers of the deceased who left no descendants or ascendants, were declared to be his sole heirs.

On February 4, 1932, M. León Parra, a member of the commission, answered the attorney for the employer, advising him that the workman had suffered a permanent loss of 40 per cent of the remunerative capacity of his left arm from the shoulder down, and that in accordance with his age and his salary he should be paid $470, that is $31.51 more than the amount granted by the employer in the proposed agreement. Mr. León Parra asked that the balance be remitted in order to add it to the check already sent by the employer for $438.49 which was in the possession of the commission.

On February 28 of the same year, Attorney Rafael Hernández Matos wrote to the Industrial Commission on behalf of the heirs, and claimed their right to receive the amount

fixed by commissioner Manuel León Parra on February 4, 1932. On May 11 of the same year, the Industrial Commission of Puerto Rico rendered the following decision:

"In June 1931, while employed by the self-insurer employer South P. R. Sugar Co., the workman Jesús Quiñones Vega suffered a bodily injury in consequence of an industrial accident, which caused him a certain partial permanent incapacity that his employer fixed at the sum of $438.49, which was sent by the latter to the Industrial Commission on August 17, 1931, by means of a check; in accordance with Act No. 85 of 1928, the employer submitted to the approval of this commission a settlement agreement between the said employer and the workman in which that sum was fixed as compensation for the incapacity which said workman had suffered as a consequence of his injury, which agreement was not approved by the Industrial Commission because it was of the opinion that the workman was entitled to receive $470, that is, $31.51 in addition to the amount of the check mentioned above.

"The Industrial Commission advised the employer to this effect and requested him to remit the balance, and, while the parties exchanged certain observations on this point, the workman in the case died on January 21, 1932, leaving as his heirs succeeding to his rights and actions several brothers who, through Attorney Mr. Hernández Matos, of Ponce, requested that the said check be delivered to them as such heirs, which request was opposed by the employer, who contended that the rights contemplated by Act No. 85 of 1928, called the 'Workmen's Compensation Act,' referred exclusively to those pertaining to the beneficiaries of a workman, that is, to those persons who, at the time of the death of the workman, were reasonably dependent on his earnings for their support, and that consequently the jurisdiction of the Industrial Commission did not go beyond this and therefore did not extend to proceedings relating to the transfer by inheritance of the property of a person by reason of his death; which jurisdiction belongs exclusively to a court of probate, and in Puerto Rico to the district court exclusively. The commission is of the opinion that, in view of the form in which the question has been raised by the self-insurer employer South P. R. Sugar Co. of P. R., in truth the proper tribunal to entertain the instant case at this point is undoubtedly a district court, and, pending decision of the point in question by a competent court, the Industrial Commission resolves

to retain in its possession the above mentioned check for $438.49, issued in favor of Jesús Quiñones Vega, to be delivered to the person designated by such court in its judgment.

The check for $438.49 was later returned to the employer by the commission.

It was in view of this decision of the Industrial Commission that the petition for a declaratory judgment was filed. The petitioners contend that, since the amount of $470 was a liquidated sum which belonged to the workman Jesús Quiñones Vega, and in view of the uncertainty and insecurity existing with respect to the person or persons to whom said sum belongs, it becomes necessary to determine judicially whether the heirs of the laborer are the legitimate owners of the said sum or whether the same belongs to the employer.

The defendant corporation set up as a special defense that the compensation awarded by the Industrial Commission of Puerto Rico in the case of Jesús Quiñones Vega was granted after the death of the said workman and the plaintiffs in this case are not beneficiaries within the provisions of Act No. 85 of 1928 (Session Laws, p. 630), by which the Industrial Commission is governed, nor are they entitled as heirs to receive the said amount.

The petition of the plaintiffs was denied. The appellants urge that the lower court erred in holding that at his death the workman Jesús Quiñones Vega left no property or any right in relation to the compensation, which would be transferable by inheritance to his brothers, the petitioners herein, as no compensation had been granted to the workman before his death. It is further urged that the court *a quo* erred in holding that any claim of the said workman before the Industrial Commission of Puerto Rico became extinguished upon his death, in accordance with the old maxim *"Actio personalis moritur cum persona."*

The lower court concluded that the Industrial Commission of Puerto Rico at no time approved the agreement between the employer and the workman, and that the letter of Feb-

ruary 4, 1932, addressed by Commissioner Manuel León Parra to the South Porto Rico Sugar Co., was not a decision of the Industrial Commission, which at no time has rendered any decision fixing the compensation to which the workman Jesús Quiñones Vega might be entitled.

We copy below the letter which was addressed to the attorney for the South Porto Rico Sugar Co., F. Manuel Toro, and which, according to the lower court, does not constitute a decision of the Industrial Commission:

"I have read your motion of January 29 of the present year relating to the above-entitled case of the employer South P. R. Sugar Co. of P. R., in which you refer to a settlement agreement between the company and the workman sent by the said company to this Commission, together with the check for the sum fixed, amounting to $438.49, for the approval of the same by this Industrial Commission.

"There is involved here a permanent loss of 40 per cent of the remunerative capacity of the workman's left arm from the shoulder down. He is 37 years old and has an earning capacity of 0.70 daily, On this basis, it is necessary to pay this laborer the sum of $470, that is, $31.51 more than the amount which you grant in your above-mentioned settlement agreement. If agreeable, please send this difference which, added to your check above-mentioned now in the possession of this Commission, will be paid to the workman.

"Awaiting your advices, I beg to remain, Very truly yours (Sgd.) León Parra, Commissioner."

On June 19, 1932, the Industrial Commission, having agreed, at the request of the employer, to clarify certain points of its decision of May 11 of the same year said, among other things, the following:

"On February 4 following, in accordance with the antecedents on this point existing in the record of the present case, it was decided that, according to this incapacity, the laborer was entitled to a compensation of $470, and a letter to that effect, signed by the Commissioner to whom the case had been assigned for report, was addressed to the attorney for the employer on the same date. It reads thus: . . . ." (Then follows the letter of Mr. León Parra transcribed above.)

From what has been stated above, it appears that the commission fixed at $470 the compensation due the workman, but that this decision was rendered after his death. The incapacity fixed by the commission's physician, which coincided with that of the physician for the insurer, was accepted by the said commission on January 4, 1932, when it decided to send the report of its own physician to the employer, in order that the latter might submit "a settlement agreement according to the incapacity established in the same."

The parties do not disagree as to the facts, which have been stated by the trial court with clearness and precision. The difficulty lies in determining whether or not the injured workman, at the time of his death, had acquired a right transferable to his heirs. The right which may subsist in favor of the heirs, after the death of a person who is entitled to compensation under the Workmen's Compensation Act, is a matter which must be considered in the light of the statutes in force in each particular jurisdiction. It may be said generally that in the majority of the states in which the courts have considered this question, the right to compensation not yet accrued ends with the death of the injured workman or of the person dependent on him, and does not pass to the personal representatives of the deceased or to the heirs.

In *Heirs of Bachier* v. *Workmen's Relief Commission*, 33 P.R.R. 975, Jesús Bachier petitioned the Workmen's Relief Commission for indemnity for an accident sustained by him while working as a mechanic in a certain factory. The petition was denied. An appeal was taken to the district court, but during the pendency of the appeal, the petitioner died and on motion of his heirs they were substituted as parties in his stead, in order to continue the proceeding. Subsequently the court, *motu proprio,* dismissed the appeal, holding that the right of the petitioner Jesús Bachier was extinguished by his death, and that his heirs could not revive

that right by virtue of a substitution of parties. In affirming the judgment of the lower court this court expressed itself as follows:

"Subdivisions 1, 2, 3 and 4 of section 3 of the Workmen's Accident Compensation Act, as amended by Act No. 61 of July 14, 1921, provide that every injured laborer shall be entitled to a certain compensation according to the transitory character of the injury or his partial or total disability, and subdivision 5 provides that if the laborer loses his life as a result of the injuries sustained, death occurring within one year from the time of the accident, the persons or beneficiaries therein mentioned, who were reasonable dependent on his earnings for their support, shall be entitled to the compensation determined by the said act.

"In the first place the purpose of the law was to provide injured laborers with the means of subsistence in lieu of the wages that they failed to receive during their disability, whether temporary or permanent, as a result of such injuries. That is a personal action of the laborer and is extinguished by his death. In relation to this right of the laborer the authorities discuss whether what the laborer received during his life should be collated with the amount of compensation to be received by the beneficiaries or dependents in consequence of his death, or whether the laborer may compromise while alive in such a manner as to estop his beneficiaries from bringing an action for his subsequent death. The authorities seem unanimous in holding that the laborer can not compromise regarding the future rights of his beneficiaries by reason of his death, but, although these questions need not be considered in this appeal, it clearly appears from said section 3 and otherwise that the law provides for two separate and independent actions without reciprocal interest between the parties really interested and, therefore, the rights of the beneficiaries do not accrue until the death of the laborer, and in that event the action is barred by our statute after one year from the time of his death.

"The law of Massachusetts is very similar to ours and the Supreme Court of that State, referring to the point raised in this case, has expressed itself as follows:

" 'We are of opinion, however, that the right to an order for the future payment of this special compensation ceases with the death of the person injured. It is a right peculiar to himself, not created for the benefit of his dependents. It is a part of the scheme for

special compensation provided by sections 9, 10, and 11 of part 2 of the act. By section 9, provision was made for special compensation for a period of total incapacity for work; by section 10, compensation was fixed for a period of partial incapacity; by section 11, as amended by the act of 1913, additional compensation is given for the total or partial loss or incapacity of certain members of the body. All of these provisions seem to have been made for the personal relief of the injured employé, his dependents being provided for by the compensation to be made for his death. The special compensation takes the place of the wages which but for the injury the employé might have earned. As was pointed out by the Industrial Accident Board in its decision, there is nothing in the language of the act which authorizes the ordering of these special payments for a time after the death of the employé, nor is such a construction required by its phraseology or its apparent purpose. If this were not so, the amounts to be paid to his dependents would be increased proportionally to the quickness with which his death followed the incurring of his incapacity, although these payments were manifestly intended to make up for the loss of his own earning capacity. In our opinion the ruling that this specific compensation should be allowed only during the lifetime of the injured employé was correct.' *In re Burns,* 105 N. E. 601, 603.''

The various statutes enacted in the states have been interpreted by the courts in accordance with their particular provisions. The decisions are indeed numerous. They agree on some points and on others they are in open conflict. This conflict does not always arise from the terms in which the statute is drafted, but from the application of different viewpoints with respect to statutory provisions that are practically identical.

The cases deal with the transferability of the rights of the injured party after his death, or of his beneficiaries, also after their death. The Supreme Court of Massachusetts, in *Murphy's Case,* 224 Mass. 592, 113 N.E. 283, expressed itself as follows:

''To hold that the dependent's right to compensation is a vested right which passes to a legatee by will and in case of intestacy goes to the dependent's next of kin, would be to put upon the insurer a

burden not called for by the object which the act was passed to attain. In addition, the compensation awarded the dependent would go in that case to persons altogether outside the class contemplated by the act. So construed the act would or might enrich strangers in place of doing justice to the family and next of kin of an employé killed in the course of and so as an incident to the business in which he was employed.

"The opposite result has been reached in England and in Ohio. But both those decisions were founded on provisions of the act there in question which were not like the provisions of our Workmen's Compensation Act. . . . For these reasons we are of opinion, that although there is no express provision to that effect in the act, the weekly payment to be made to the dependent comes to an end when the dependent dies."

The above decision was confirmed in *Bartoni's Case,* 225 Mass. 349, 114 N. E. 663, and in *Bott's Case,* 230 Mass. 152, 119 N. E. 755.

In *Cambridge Mfg. Co.* v. *Johnson,* 153 Atl. 383, it is said that if an injured person has been awarded, by the commission or by the court on appeal, compensation, even though the decision of the court were after his death, his administrator would be entitled to collect that portion which he would have been entitled to collect up to the time of his death. As to that portion of the award which the injured person was not entitled to receive during his lifetime, according to the court, no administrator or other person has the right to collect after his death.

In *Bry-Block Mercantile Co.* v. *Carson,* 288 S.W. 726, decided by the Supreme Court of Tennessee, it was held that the right to compensation not yet accrued, to which a person who is dependent on the workman would become entitled, is terminated by his death, and does not pass to his personal representatives or heirs. In said case it was emphatically asserted that if the workman dies from natural causes, his representatives have no claim against the employer, and if the death results from injuries received in the industry, there are special provisions to take care of the employee's depend-

ents. It was stated that it would put an additional burden on the employer, not contemplated by the statutes, to require him to pay either wages or compensation to representatives of an employee who died from natural causes. The Tennessee court added that if the workman had a vested right at the time of his death to recover compensation for 83 additional weeks, if this was the debt due him, the right to collect this debt would have passed to his personal representative. It was denied that any vested right was involved, and it was declared that wages cease with death and likewise compensation received in lieu of wages must cease with death.

In England the right to compensation which arises upon the death of a workman passes to the representatives of the estate of a deceased who was dependent on the said laborer. *Darlington* v. *Roscoe,* (1907) 1 K.B. 219, 76 L.J.K.B.N.S. 371, 96 L.T.N.S. 179, 23 Times L.R. 167, 9 W.C.C. 1. It has been decided by the House of Lords that where a beneficiary under the compensation laws of England dies before making a claim for compensation, his legal representatives may request it, on the ground that the right to make the claim was vested in the beneficiary at the time of the death of the workman and passed to the legal representatives of the former. *United Collieries* v. *Hendry* (1909) 101 L.T.N.S. 129; A.C. (8th L.) 383; 2 B.W.C.C. 308.

In *McRandall* v. *Canadian Cartage & Storage Co.* (1924) Rap. Jud. Quebec 62 S.C. 152, the guardian of a minor claimed compensation for injuries suffered by the latter, and the ward having died, it was held that the action could be continued by his heirs, who had the same rights as the employee, according to the workmen's compensation act.

In *State ex rel. Munding* v. *Industrial Commission,* 92 Ohio St. 434, 111 N.E. 299, the Supreme Court of Ohio declared that an award of compensation to the dependent of a workman, who died as a result of an accident, vested in the dependent as soon as the award was made, in accordance

with the workmen's compensation act of the said state. It was held in this case that, upon the death of such defendant, his or her personal representative was entitled to the unpaid balance or remainder of the amount.

In the case of *Haugse* v. *Sommers Bros. Mfg. Co.*, 51 A.L.R. 1438, 254 Pac. 212, the workman lost an eye by enucleation during the course of his employment. The insurance company agreed to pay the injured workman a certain sum. This agreement was approved by the Industrial Commission. The workman died after the agreement had begun to be performed. The insurance company then asked that it be relieved from paying any further compensation. The Supreme Court of Idaho expressed itself as follows in deciding this question:

"The casualty company argues that it is the policy of the Workmen's Compensation Law that compensation be paid the workman only during the period of his incapacity for work, and that on a termination of incapacity compensation should cease. It is true that, under C. S. section 6231, as amended (Laws 1921, c. 217, section 3), it is provided that, where the injury causes total disability for work, 'the employer during such disability . . . shall pay the injured employee . . .' and that similar language is found relating to injuries causing partial disability. C. S. section 6233, as amended (Laws 1912, c. 217, section 4.) There is also contained in each of such sections a proviso that 'in no event shall the weekly payments continue after the disability ends.' However, these sections do not cover the injury sustained by the workman in this case. On the contrary, C. S. section 6234, as amended (Laws 1921, c. 217, section 5), is applicable to this particular injury. That section provides:

" 'In the case of the following injuries the compensation shall be fifty-five per centum of the average weekly wages, but not more than the weekly compensation provided in section 6231, in addition to all other compensation, for the periods stated against such injuries respectively, to wit: . . . . One eye by enucleation, 120 [weeks]. . . .'

"There is nothing in C. S. section 6234, or in the entire act, providing for a cessation of payments, for the loss of an eye by enucleation, on the death of the injured person. By its approval of the agreement the board awarded the workman $1,920. The award

was in accordance with the statute, and was unconditional; it was not made to depend on a continuation of incapacity, or whether the workman lived throughout the life of the agreement; and the casualty company was not released from its obligation by the death of the injured workman."

In *Heiselt Constr. Co.* v. *Industrial Commission*, 197 Pac. 589, 15 A.L.R. 799, 802, the award was made after the death of the workman who left no dependents, as occurs in the case at bar. The Supreme Court of Utah held that the administrator of the estate had no right to recover, because the right to the compensation ceased with the death of the laborer and was not transferable. In referring to the award of the commission the court said:

"In this case no award was ever made to a person while living, nor was there a person living to whom it could have been made. It was not made until December 20, 1920, nearly nine months subsequent to Murphy's death. This distinction may not be entitled to serious consideration. The writer has no desire to advance a suggestion by way of argument that is wholly devoid of merit. The point, however, intended to be made by the distinction referred to is, if the right does not vest until the award is made, then, in the present case, there was no vested right, because there was no one living in whom it could vest. We can hardly conceive of a right passing to an estate unless the right had vested in some one while living."

Judge Gideon, who delivered a dissenting opinion, said in reference to this point:

"I regard the date of the award as wholly immaterial. The right was or was not in existence prior to the death of the deceased. In this case, admittedly, the deceased, in his lifetime, had the right to demand the compensation as fixed by the statute. The award does not make the right. The award is dependent upon the legal right existing before it is made. It is merely the act of the Commission recognizing a right already in existence.

"It is suggested in the opinion of the court that it is hardly conceivable of the right passing to the estate unless the right had vested in some one while living. If the right was in any way dependent upon the award that suggestion might have some weight in the rea-

soning of the court. The right, however, was not dependent upon the award. The right was created by statute. I have attempted to point out that there is nothing in the statute that defeats the right by reason of the death of the claimant."

In *Greenwood* v. *Luby,* 105 Conn. 398, 135 Atl. 578, 51 A.L.R. 1443, it was held that the death of the injured workman before the award does not prevent the making of an award in favor of the representative of the estate, for the amount accrued as a result of his incapacity prior to death. According to the court, that part of the compensation accrued during his lifetime which had not been paid became a part of the estate.

In *Morgannelli's Estate* v. *City of Derby,* 105 Conn. 545, 135 Atl. 911, the employee died after the proceedings to obtain the compensation had been begun and before the award was made. The court held that the commissioner acted properly in maintaining that all of the compensation which originated and accrued during the lifetime of the employee belonged to the estate.

In the case of *City of Milwaukee* v. *Industrial Commission,* 185 Wis. 307, 201 N.W. 251, the court expressed itself as follows:

"The award does not fix the right to, only determines, the amount of the compensation for the injury. The right to the compensation is fixed by the statute, the amount is merely the administrative detail."

As we have said, the majority of the authorities are to the effect that the right to compensation not yet accrued is terminated with the death of the injured workman. However, that portion of the compensation already accrued at the death of the laborer constitutes a vested right which may be claimed by the heirs or the representatives of the estate. We think, as do the majority of the courts, that in Puerto Rico this conclusion may be reached. The evident purpose of our

legislation is to benefit, in the first place, the workman who sustains the injuries, and in case of his death, those who depend upon him for their support; but this does not mean that once a right is acquired by the person directly injured, this right, in a case like the present one, in which the workman left no dependents, may be claimed by his heirs, his executor, or the administrator of the estate. Our law grants compensation directly to the workman for his partial or permanent incapacity during his lifetime, and in cases of death, within a year after the accident has occurred, to the persons who are specified in section 5 of the said act, if they reasonably depended for their living on the earnings of the injured laborer. The laborer in this case suffered a 40 per cent loss in the remunerative capacity of his left arm. The compensation was fixed taking into account the permanent nature of this injury, the age of the laborer, and his earning capacity. Section 5 of the law in force in Puerto Rico provides that the compensation shall be fixed in relation to the wage rate earned by the laborer, taking into account the earning capacity of the injured party, his life expectancy, and the importance of the injury suffered. There is no difficulty at all, in our opinion, in fixing the compensation which this laborer should have received up to the time of his death. In accordance with the law, "the money compensation corresponding to the laborer or to his heirs . . . may be granted in monthly part payments. If the commission grants compensation in one sole payment it shall use its good offices, by means of reasonable suggestions, to have the sum so granted invested in a manner beneficial to the welfare of the laborer or of his beneficiaries." The compensation in one sole payment is not possible where the award is made, as in the present case, after the death of the laborer. It is not possible to award compensation to cover wages which will never be earned, since the person with the right to collect them died before the award was made. We think, however, that the

commission is authorized to fix the amount of the compensation corresponding to the injured workman up to the time of his death, and that it should do so at the request of the heirs.

We are of the opinion that the judgment appealed from must be reversed and another rendered instead holding that the heirs of Jesús Quiñones Vega are entitled to claim the amounts to which the said laborer would have been entitled up to the time of his death.