MRS. HENRY CLAY WILSON *v.* ST. LOUIS TERMINAL DISTRIB-
UTING COMPANY AND HARTFORD ACCIDENT &
INDEMNITY COMPANY.

(*Nashville,* December Term, 1954.)

Opinion filed March 11, 1955.

Petition for Rehearing denied May 6, 1955.

172

HUNTER LANE and CHARLES A. WALT, both of Memphis, for appellant.

BURCH, PORTER & JOHNSON and BAILEY BROWN, all of Memphis, for appellees.

MR. JUSTICE PREWITT delivered the opinion of the Court.

This is a workman's compensation suit which resulted in the Probate Judge dismissing the petition and the case is here on appeal in error by the petitioner.

The lower court held that the death of the deceased, while occurring in the course of did not arise out of his employment.

The petitioner is the widow of Henry Clay Wilson, who was sixty-nine years of age at the time of his death, and was employed as a watchman for the defendant St. Louis Terminal Distributing Company. His duties were to

guard barges at the foot of Illinois Avenue, in the city of Memphis, Tennessee.

He was found dead about 6:30 A. M. on or about November 5, 1953, and at which time he was sitting in an office type or swivel chair, in a cabin, with his right hand in his lap, and his left hand hanging by his side, with his head leaning backwards against the wall. He died apparently without any struggle externally or internally. There was no evidence of violence whatsoever.

It is the insistence of counsel for the petitioner that having established the death of Mr. Wilson at his post of duty, without direct evidence as to the manner of his death, that an inference arises that the accident arose out of and in the course of his employment, and that the burden is then shifted on the defendant to overcome this presumption.

On the other hand the defendants take the position that on the particular facts of this case that such a presumption does not apply.

The deceased was apparently in normal health at the time of his death. He went to work about 11:00 o'clock on the night of November 5, 1953, relieving another guard, a man by the name of Pierce. The latter testified that he saw nothing abnormal about the deceased in his general appearance, but that the deceased made a comment that he had a hurting in his chest and was going to sit down.

It appears that about a week or ten days before his death he had taken some penicillin shots.

The defendant's place of business is at the foot of Illinois Avenue, and the deceased, in order to get to his work, drove his automobile west on Illinois Avenue, down a grade, and then turned southwardly along the regular road, or black-top road, where he parked his car. After

getting out of his automobile, he walked down an incline, in the direction of the barges which he was to watch. The distance from the point of the automobile to the first barge was approximately 250 feet. The walk-way is first a down-grade of about 35 degrees, and then it levels off for some distance, and then it declines again at approximately a 35 degree angle, and then levels off as it goes for some distance before it reaches the first barge.

Mr. Wilson walked down this walk-way, a distance of about 250 feet, and then he got on the first barge, which was approximately level with the walk-way. After crossing the east side of the barge, he had to go down where there were tracks. This was on a lower level of 4 feet and 8 inches. To reach this lower level he walked down a staircase, consisting of approximately nine steps, and then crossed three pairs of tracks. Then, to get upon the other edge of the barge he had to go up a similar flight of steps, which had a height of 4 feet and 8 inches, approximately, on the west side of the first barge. He went from there on a level surface, to the concrete barge, on which his shack or cabin was located, which was on the south end of the barge.

On the night of November 5, 1953, just before getting out of his car he sounded his horn, which was a signal to Mr. Pierce that he was ready to relieve him. After passing Mr. Pierce, as before stated, the deceased was next seen about 6:30 A. M. sitting in his chair dead.

It is the position of the petitioner that under the above statement of facts that a presumption arises that an accident arose out of and in the course of his employment, and that it was the duty of defendant to overcome this presumption.

There was no evidence of any exertion aggravating a pre-existing diseased condition. There is no internal or external evidence of an accident. Whether the deceased died from a disease, or from natural causes is uncertain, but we cannot reasonably infer that the death of the deceased was due to an accident arising out of and in the course of his employment. In fact, it seems more reasonable for us to infer that he died from a disease, rather than from an accident.

Death is not compensable under the Workmen's Compensation Law unless it is shown that it resulted from injury by accident arising out of and in the course of the employment of the deceased. Code Section 6852(d).

Where it is shown that the employee is subjected to physical exertion and that while so exerting himself is caused to be stricken with an ailment from which he dies, a prima facie case is made. *Milstead* v. *Kaylor*, 186 Tenn. 642, 212 S. W. (2d) 610; *Lay* v. *Blue Diamond Coal Co.*, 196 Tenn, 63, 264 S. W. (2d) 223.

The fact that an employee was found dead at his place of employment during working hours does not create a prima facie case. *Home Ice Co.* v. *Franzini*, 161 Tenn. 395, 32 S. W. (2d) 1032; *Farris* v. *Yellow Cab Co.*, 189 Tenn. 46, 222 S. W. (2d) 187.

The petitioner relies on *Milstead* v. *Kaylor*, 186 Tenn. 642, 212 S. W. (2d) 610, 614, where it appeared that the deceased was loading logs on a truck in the hot sun, when he suddenly dropped to the ground in a faint and died shortly thereafter. There was no other proof of the cause of death except the death certificate, which showed it as "probable heart attack." It was petitioner's theory that death was caused by heat stroke induced by exertion in the hot sun and defendant's theory that it was caused by

heart attack. The court in holding that petitioner was entitled to compensation had this to say:

"Here we have uncontradicted evidence of an employee in good health and of strong physique, while at his work in the very hot sun, lifting heavy timber, suddenly falling to the ground and 'lying there with his chest going up and down that way,—and I went there and he was dying.' From these facts it was the duty of the court to draw legitimate inferences that seem most reasonable. Sunstroke or heatstroke is a common occurrence under certain conditions. It is common for laymen to warn against it under certain circumstances and conditions, among which are those herein shown."

In *Cunningham* v. *Hembree,* 195 Tenn. 107, 257 S. W. (2d) 12, it appeared that the deceased was stricken while doing manual labor in the hot sun and died shortly thereafter, and the Court held that proof of these facts created a prima facie case of compensability.

The only physical exertion shown in the present case was of a very minor nature, which occurred approximately seven hours before the deceased was found dead. In this connection the cases of *Patterson Transfer Co.* v. *Lewis,* 195 Tenn. 474, 260 S. W. (2d) 182; and *Railway Express Agency* v. *Clark,* 6 Cir., 194 F. (2d) 29, are similar to the Milstead and Cunningham cases as to facts and results.

We have another recent case of *Farris* v. *Yellow Cab Co.,* 189 Tenn. 46, 222 S. W. (2d) 187, that makes it clear that the mere fact that the deceased is found dead at his place of employment during working hours does not create a presumption of compensable death.

In the recent case of *Lay* v. *Blue Diamond Coal Co.,* 196

Tenn. 63, 264 S. W. (2d) 223, 224, it appeared that an employee underwent severe physical exertion and was immediately stricken with an ailment from which he died, and under these facts a prima facie case was made. The facts were that the deceased, on his first day of employment with defendant, entered the mine and was required to crawl or walk "humped over" 500 to 800 feet to get to the point in the mine where he was to work. The deceased fell unconscious between five and ten minutes after this severe physical exertion, after which he was then taken to the hospital, where his ailment was diagnosed as a heart attack from which he died. In that case the Court said:

"Thus, the uncontradicted evidence is that in not less than five, nor more than ten, minutes after Lay had undergone this strain exacting walk of 500 to 800 feet he was found unconscious at his post of duty. There was no exterior evidence of violence.

"Lay was immediately carried to the hospital and placed in charge of Dr. W. E. Smith, an eminent specialist in that branch of medicine which has to do with the circulatory system, etc. of the blood in the human body. As soon as the patient's condition permitted, Dr. Smith made the examination and test necessary to pinpoint the trouble and its seat. He thereby ascertained that Lay had suffered 'a spontaneous rupture of an intercranial artery' at a point where there was 'a congenital aneurysm'."

It will be seen that the recovery in that case was allowed because there was proof that the cause of death was heart attack which was brought about by physical exertion in connection with the employment of deceased.

We are of the opinion that in this case there is

no presumption that the deceased died from an accident arising out of the course of his employment. Nor can it be reasonably inferred that such was the case. We do not think that the facts of this case bring us to the point of the Milstead and Lay cases, supra, where a recovery was allowed.

It results that all of the assignments must be overruled and the judgment of the lower court affirmed.