Flatt *v.* Tennessee Handle Co. *et al.*

(*Nashville,* December Term, 1949.)

Opinion filed March 17, 1950.

Trabue & Sturdivant, of Nashville, for plaintiff in error.

E. A. Langford and A. B. McKay, both of Cookeville, for defendants in error.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This is a suit to recover compensation for the partial loss of the sight of an eye. The plaintiff, J. C. Flatt, was employed by the Tennessee Handle Company in its plant at Cookeville and while performing his customary duties he was struck in the eye by a small piece of wood. The only question made on this appeal is the extent of the plaintiff's disability.

The accident occurred on September 24, 1947. He was taken to a local physician who "bandaged it up" and he continued to work until February 8, 1948 when he was sent to an eye specialist in Nashville by his employer. At that time the extent of his disability was fixed at 8½ per cent to the right eye. No compensation had been paid him. His eye continued to bother him and on September 10, 1948 he went to see Dr. W. M. Brown who found that the degree of plaintiff's disability had progressed to 23 per cent. On July 24, 1949, he was again examined by Dr. Brown who pronounced his disability to be 50 per cent. On the trial of the case he gave the following testimony:

"Q. This injury that you received, has it gotten better or worse? A. Well, it's got worse.

"Q. State whether or not it has bothered you and does it bother you considerably? A. Oh, sure it does."

The nature and extent of the plaintiff's injury appears in the testimony of Dr. Brown, who was conceded to be a competent eye specialist. He testified that there was a scar "directly over the pupil" when he first saw him and his vision was 20/50; that would give him a loss of twenty three per cent. When he examined him

later he found that the loss of vision had "grown worse". This was in July, 1949. At the time of the trial he testified that his vision was "20/100 loss of 51 per cent". He was definitely of the opinion that "the first loss was due to the injury, but the second loss may be from some other cause, I mean progressiveness". "It could be attributed to the injury." He was asked, "What is your opinion on that?"

"A. It might have something to do with it. His condition is permanent."

He was asked as to other causes, not related to the injury, which might affect his sight.

"Q. You didn't find anything like that? A. There was a little thinning out of the retina, looks a little pale, as to the cause of it I couldn't state.

"Q. Could that injury have caused that, everything you are talking about? A. Could, possibly.

"Q. And I will ask you if the authorities teach that an injury does cause that very thing? A. Yes."

He was cross-examined at length by defendants' counsel, and by the trial judge as to what might have caused the progressive loss of the sight, causes not related to the injury. While he gave it as his opinion that some disease could have caused it, yet he testified that he did not find any disease, "did not find anything else that would have caused this additional loss, progressive loss?" Answer, "No, no."

The trial judge found in favor of the plaintiff and awarded compensation for 51 per cent loss of vision in his right eye. The only assignment of error which we are asked to consider is that the trial court should have made an award for twenty-three per cent loss of vision and not a fifty-one per cent loss. We have made specific

reference to all the evidence that appears to have any bearing upon the question at issue and find that it supports the judgment complained of.

That the injury to the plaintiff's eye was the direct cause of progressive loss of vision is not seriously controverted, except by way of argument of counsel who contends that the medical witnesses fail to testify that loss of vision is attributable to the injury, or at most it is only a possiblity. But there is no evidence of any disease, or any other cause that is not related to the injury. This being true it would be pure speculation for the Court to find and adjudge that the loss of vision, *above twenty-three per cent*, was due to some cause that is not compensable. Able counsel concedes a progressive loss of vision from 8½ per cent to 23 per cent, and that to that extent the employee is entitled to compensation. Now if there was such progressive loss of sight attributable to the injury up to 23 per cent, then by what parity of reasoning should the Court indulge to hold that when the progressive loss reached that percentage (23%) of disability *because of the injury* it suddenly ceased and from that moment it should be attributable to some unknown cause which has no relation to the injury?

The evidence is admittedly circumstantial, but the conclusion reached by the trial judge is logical and reasonable. Moreover it is settled law in this State that the rule of reasonable inference, where the evidence is circumstantial, has been recognized in all compensation cases. Thus in *Hartwell Motor Co., Inc.* v. *Hickerson,* 160 Tenn. 513, 520, 26 S. W. (2d) 153, 156, it is said: " 'If the findings are supported by inferences which may fairly be drawn from the evidence even though the evidence be susceptible of opposing inferences, the reviewing court

will not disturb the award.' *Hartford Acc. & I. Co.* v. *Industrial Acc. Com.,* 202 Cal. 688, 262 P. 309, 310, 58 A. L. R. 1392.''

''When there are certain facts proved, the court not only may, but it is its duty to draw therefrom legitimate inferences that seem most reasonable.'' *Riley* v. *Knoxville Iron Co.,* 178 Tenn. 107, 112, 156 S. W. (2d) 398, 400.

The judgment of the trial court is affirmed.

All concur.