**HOWELL v. CHARLES H. BACON CO.**

No. 1198.

United States District Court
E. D. Tennessee, N. D.
March 12, 1951.

Supplemental Opinion May 24, 1951.

Hodges & Doughty, Knoxville, Tenn., M. G. Goodwin, Lenoir City, Tenn., for plaintiff.

Clyde W. Key, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

This is an action for recovery of death benefits under the Workmen's Compensation Law of Tennessee, Code sec. 6851 et seq. The employee, Roy Howell, was injured May 8, 1948, by a fall from a broken scaffold to a concrete floor, where he landed on his feet after a six-foot drop. Perceptible injury was to his left foot, which X-ray study disclosed to be a fracture of the heel bone, involving its joint with an adjacent bone. The direct cause of his death August 17, 1948, was a coronary thrombosis, and the problem here is to determine whether the original injury to the heel was the cause of the arterial condition that resulted in the coronary thrombosis, or a contributing cause of death by aggravation of a preexisting arterial disease.

Two days after the death the body was examined at the request of defendant's insurance carrier, the autopsy showing that a coronary artery had developed sclerosis, that a blood clot had formed in the constricted region of the artery of such character as to stop the flow of blood, and that no other organ of the body showed any serious abnormality. The parties have stipulated that the coronary thrombosis was the immediate cause of death. There is no question that the death is compensable if the necessary causal relation existed between the injury and the death.

In addition to the lay witnesses, five doctors have testified. From the medical testimony, it appears that the interior space or blood conduit of an artery is the lumen; that arteriosclerosis is a constriction of the lumen; that a thrombus is a blood clot that

has formed in the locality of the constriction; that a coronary artery is one that supplies the heart muscle with blood; that an occlusion is a closing of an artery by the deposit of a thrombus or other type of blood clot at the point of constriction; that coronary thrombosis is a term commonly applied to the heart condition that results from the occlusion of the coronary artery by a thrombus. When the sclerotic condition is located near the point where the coronary artery receives its blood from the heart, an occlusion causes a complete stoppage in the coronary system, and death is immediate. Where the constriction occurs farther along in the coronary system, an occlusion does not result in a complete stoppage, and enough blood may reach the heart muscle to continue it in operation. Again, where the constriction is not attended by an occlusion, the blood may continue to flow, but in reduced quantity, with the result that complete heart failure is not necessarily immediate. In the case here, the autopsy showed that the constriction was some distance from the point at which the artery received blood from the heart, but not sufficiently far to allow passage of enough blood to the heart muscle to sustain life when the occlusion occurred. What caused the coronary "heart attacks" that Roy Howell had before the fatal one has not been explained otherwise than by the generalities heretofore mentioned, but it may be inferred that during the previous attacks the lumen became temporarily constricted or partially occluded to the danger point, producing what has been described as "a hurting in the chest."

According to the medical testimony, the cause of a sclerotic condition in an artery has not been conclusively determined, although a number of predisposing conditions are suspected of having a causal relation thereto, as excessive smoking, alcoholic drinks, worry, physical and mental pain, overexertion, and obesity and its resultant deposit of fatty materials in the blood stream. It is not known of a certainty how long Roy Howell was afflicted with a sclerotic condition. Mild discomforts may have passed unannounced, for "he was not one to complain." Doctors who saw him during the days and weeks closely following his in-

jury discovered no symptoms and were given no history of a heart ailment, yet the medical testimony indicates that sclerosis may exist for a considerable time without its presence being suspected. According to the testimony of Dr. R. H. Baker, a heart and lung specialist of much experience, it is the consensus of medical opinion that five years of life may ordinarily be expected after a coronary first stroke. Dr. George S. Mahon, the pathologist who performed the autopsy and found the coronary occlusion, testified that a coronary occlusion is not produced all at one time, but over a period of months, or years. "The final closing," he said, "is the end result of a long process."

Roy Howell was injured May 8, 1948, and was the same day taken to a surgical clinic where his foot was examined by X-ray and he was given temporary treatment. He was sent home by the attending physician and instructed to return ten days later for further treatment. May 18, 1948, he was admitted to a hospital, and May 21, 1948, a fusion operation was performed on the heel joint and the foot and leg below the knee placed in a rigid cast. He was discharged from the hospital May 27, 1948. He made return visits to the clinic on June 3, June 24, and July 27, 1948. On June 24 a fresh cast was substituted for the original, and on July 27 a leather lacer brace was substituted for the cast. The clinical record indicated satisfactory progress toward fusion of bones in the foot, but lay testimony is in accord that the exterior of the heel did not regain a normal appearance. His widow, the plaintiff, testified that "the whole side of his foot was just black, just like it was bruised blood in there * * * it was still that way when he died." J. L. Brown, father of the plaintiff, testified that the foot was black and blue around the place where the operation was performed. Kenneth Leroy Howell, son of the deceased, testified that the black part of the foot was "as big as your fist," and that "it was just black and nasty looking."

Those three witnesses also testified that he was continually in pain from the time of his injury until his death; that he worried constantly about his condition; that he was unable to walk or bear weight on the in-

jured foot, and that he walked on crutches to the nearby home of his father-in-law on the day of his death. His widow testified that he could not rest at night, that he put pillows under his injured foot, but that he "couldn't get it no way to where he could rest." The first attack of pain in the heart region of which he complained occurred about two weeks before his death when "he had a hurting in his chest." On the day before his death, he had another attack, more severe than the first. The third attack came about 4:00 p. m. of the day of his death. He rallied from this attack, but about 8:30 p. m. he had the fatal attack, his death being immediate.

Preponderance of medical opinion is, that the coronary thrombosis could not have been directly caused by the foot injury. This is explained by distinction between a thrombus, which is a blood clot formed in the locality of the sclerosis, and an embolus, which is a blood clot formed elsewhere. Autopsy revealed a thrombus, not an embolus. It would have been physically impossible for a blood clot formed in the foot to reach the coronary artery for the reason that the blood from the foot had to pass through the capillary systems of the liver and the lungs on its return to the heart and a blood clot could not have passed through the capillaries. This testimony eliminates only the possibility that the blood clot which caused the occlusion was formed in the foot. The record is silent as to any toxins or deleterious fluids that might have been cast into the blood stream from the injured foot and as to any effect they might have had on the coronary artery.

However, one of the five doctors who testified was of the opinion that the injury and its after-effects could have caused the coronary condition which resulted in the employee's death. Another listed some of the predisposing factors believed by the medical profession to cause coronary disease as advancing age, smoking, and high nervous or emotional tension. Despite the skepticism of the majority as to causal relation between the injury and the onset of coronary disease, three of the five doctors were freely of the opinion that the shock of the original injury, the operation, the constant pain and worry, the inability to sleep well, the emotional upset and high nervous tension of the deceased, could have aggravated a coronary disease. One doctor doubted that there was any aggravating effect, but three recognized the possibility, and one, Dr. Hughes Johnson, testified positively that aggravation of a preexisting sclerosis, if any, was a certainty. Even the most skeptical of the five doctors admitted that when patients are found to be suffering from sclerosis of the coronary artery, "* * * we don't like to have them engage in heavy physical activity," and "* * * we don't like to have them worried."

The Court is of the opinion, and so finds, that the sclerosis of the coronary artery preexisted Roy Howell's injury. The deposition of Dr. Mahon, the pathologist who performed the autopsy, so indicates. He found in the anterior descending branch of the coronary artery a marked degree of hardening, "and at one point it was completely closed, completely plugged up." This condition was caused by a blood clot formed in life. The plug "was composed partially of old atheromatous process, that is, old disease, and partially by fairly fresh blood clot." His conclusion was that the disease must have been present "for months or even years." The disease was a very severe process "with, as I recollect here, calcification and other very advanced changes in the artery." It was his opinion in coronary cases that "the final closing is the end result of a long process." That sclerosis of the coronary artery is of slow development is indicated, also, by other testimony. It was the opinion of Dr. Daniel R. Thomas that if a patient has a coronary occlusion and survives it, he will have another within two to five years, and Dr. R. H. Baker, the heart specialist, indicated a life expectancy of five years following the coronary first stroke.

█ It is shown by the record that this employee sustained a severe injury to his left foot May 8, 1948, and that from that day until the time of his death August 17, 1948, he was never free of worry, pain, and high nervous tension. By the greater weight of the medical testimony, those are

recognized as conditions to be avoided by patients afflicted with coronary sclerosis, for the reason that they are believed to have an aggravating effect on the disease. That belief is the result of medical observation and experience and, in a case of this kind, is the best evidence available on the subject of causal relation.

■ In a supplemental memorandum, in the case of Sage v. Tennessee Eastman Corporation, 98 F.Supp. 893, 894, this Court said: "From the medical testimony, two inferences could be drawn: One, that the cause of plaintiff's coronary thrombosis is unknown; the other, that it was caused by the overexertion in lifting the iron pipe and making the difficult turn at the head of the stairs. The medical testimony more strongly supports the latter, and as a matter of law I am authorized to adopt, and I have adopted, the stronger inference. Benjamin F. Shaw Co. v. Musgrave, 189 Tenn. 1, 222 S.W.2d 22; Graybeal v. Smith, 189 Tenn. 412, 225 S.W.2d 556; Milstead et al. v. Kaylor et al., 186 Tenn. 642, 212 S.W.2d 610. It is well settled in the State of Tennessee that disability resulting from an untoward event, which we commonly refer to as an accident, that hastens the onset of an affliction or aggravates a preexisting disease, is compensable. Lucey Boiler & Mfg. Corp. v. Hicks, 188 Tenn. 700, 222 S.W.2d 19; Swift & Co. v. Howard, 186 Tenn. 584, 212 S.W.2d 388."

■ In the Court's opinion, the quoted language states the law applicable here. It has been called the rule of reasonable inference. Flatt v. Tennessee Handle Co., 190 Tenn. 190, 193, 228 S.W.2d 110. The stronger inference here is, that the injury of Roy Howell and the inseparable consequences of ceaseless pain and worry and nervous tension aggravated a preexisting coronary sclerosis and hastened his death. Under the authority of the cases cited hereinabove, his death is compensable. See, also, Storie v. Taylor Supply Co. et al., 190 Tenn. 149, 228 S.W.2d 94.

Let an order be prepared, awarding plaintiff the benefits provided by the statute, based upon the stipulated average wage of the deceased of $43.06 per week, and the proven ages of his two minor children, the older being thirteen years of age at the time of the death of the deceased and the younger two years of age, the widow and the two children being the deceased's dependents.

### Supplemental Opinion.

A memorandum opinion was filed in this case sometime after the conclusion of the proof. Immediately following the filing of the memorandum, counsel for the defendant requested that the memorandum be withdrawn and the case be reopened for oral argument. This request was granted, as indicated by order entered on April 6, 1951. Upon further hearing, arguments were heard, no further proof being offered by either side.

In an able and forceful argument counsel for the defendant urged that the blood clot which was the immediate cause of the death of the employee, was in no way related to his accident and resulting injuries. He contended that the predisposing factors of shock, worry, pain and high nervous tension which the deceased displayed during the period from his injuries to his death, are not predisposing factors in thrombosis, except the predisposing factor of shock which may, or may not cause thrombosis but that if it does cause thrombosis, will do so immediately after the shock, or at most within a period of a few days; that since the deceased lived some three months and one week from the date of his injuries, the shock which he may have sustained by reason of the injuries, had spent itself and could not have caused or contributed to the cause of thrombosis.

In a case of this kind where death occurs approximately three months and one week after the accidental injuries, and from failure of function in an organ somewhat remote from the situs of the injuries, the Court recognizes the difficulty of establishing causation between the accident and the death. There is a border line on one side of which lies probability, whereas the other direction runs into speculation. Cause of death here was removed from speculation

in the area of such convincing probability that the Court felt justified in finding as a fact that the employee's injury aggravated a preexisting coronary sclerosis and continued the aggravation without let-up so as to hasten the death of the employee.

While Dr. Bourkard was of the opinion that emotional upset (shock) might aggravate a coronary ailment, he did not believe that emotional upset from an injury followed by an "operative and post-operative period" would continue for a period of three months and one week. But on cross examination Dr. Bourkard expressed a further opinion that if emotional upset did continue over that period, it would "be a factor in coronary disease, if the disease was present." Testimony of lay witnesses established that emotional upset did continue to manifest itself through high nervous tension, sleeplessness and worry until the day of the death of the employee. When considered together, the resultant testimony points to the conclusion that this employee's emotional upset was a contributing and hastening cause of his death.

It was Dr. Mahon's opinion that there could not have been any causal connection between the employee's heel injury and treatment and his death from coronary thrombosis. This opinion must be construed as relating not to a preexisting coronary ailment, but to a coronary occlusion, directly caused by the injury. Dr. Mahon, however, admitted that his profession recognizes a relation between the shock of surgical operation and coronary occlusion. On cross examination he testified that where a sclerotic condition exists in the coronary artery, the disease causes the artery to get smaller until finally it closes up, or constricts until the blood cannot get through, or causes the blood to be slowed to such an extent that a clot forms spontaneously. He testified also that a coronary occlusion is not produced all at one time but is something that may come over a period of months, or even years.

In his argument defendant relied on the testimony of Dr. Baker, as well as on that of the two doctors mentioned above. It was Dr. Baker's opinion that coronary sclerosis could have existed prior to the employee's injury. He would not say upon a hypothetical statement of facts that the injury would have caused the sclerosis, but he did make this statement, "The pain and suffering and worry, as far as I will go, will aggravate the condition. If he had infection in his leg or ankle that could have added to it * * *. It is impossible to say how long these coronaries have existed." It was his opinion also that pain, suffering and mental distress, such as this employee is shown to have had, would aggravate a sclerotic condition and hasten death.

Testimony of one of the other two medical witnesses on the matter of causation was even more favorable to the plaintiff's case than the testimony referred to above.

It is not the insistence of the plaintiff here that the coronary occlusion which caused the employee's death was the result of shock alone. The autopsy showed that the coronary artery had a preexisting sclerosis. It is explained by Dr. Mahon that sclerosis is a disease which causes the artery to become constricted so that the blood channel becomes smaller and smaller. It is this condition which, in the opinion of the medical witnesses, is subject to aggravation by the post-injury conditions from which the employee is shown to have suffered continuously from the date of the injury to the date of his death. Defendant's contention that the sluggish flow of blood is a cause of thrombosis is not inconsistent with this explanation of how coronary sclerosis may result in formation of a blood clot in the artery.

After consideration of defendant's argument and reconsideration of the proof in the record, the Court is of the opinion that the case was correctly disposed of by the memorandum heretofore filed and later withdrawn. The Court accordingly reinstates said memorandum as the opinion of the Court in this case and directs that it be refiled by the Clerk ahead of this supplement.

Let an order be prepared as directed in the original memorandum.