Mae SWEAT, Plaintiff,

v.

U. S. FIDELITY & GUARANTY COMPANY, Defendant.

Civ. A. No. 3650.

United States District Court
E. D. Tennessee, N. D.

Jan. 13, 1959.

Paul E. Parker, O'Neil, Jarvis, Parker & Williamson, Knoxville, Tenn., for plaintiff.

Hodges & Doughty, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

Mae Sweat, plaintiff, is the widow of Otis Sweat. She instituted this suit to recover benefits under the Workmen's Compensation Law of Tennessee (T.C.A. § 50–901 et seq.) for the death of her husband. The death occurred on March 12, 1957.

Her husband was an employee of the Wright & Lopez contracting firm which is, and was, engaged in the work of relocating telephone poles for telephone companies. The work in which the contractor was engaged at the time of the death was that of relocating telephone poles in the Tazewell Pike area of Knox County, Tennessee, for the Southern Bell Telephone & Telegraph Company. Mr. Sweat was 57 years of age at the time of his death.

Insofar as his widow knew, Mr. Sweat was a person enjoying good health up until the Thursday preceding his death which took place on Tuesday. On this Thursday before his death on Tuesday he came home from work about 5:15 p. m. in physical distress caused from difficult breathing which in turn caused smothering spells. He ate his supper on that Thursday night and went to bed without leaving his home.

Fortunately he and his crew only worked one-half day the following day, which was Friday, because of weather conditions or some other condition beyond the control of the crew. Upon quitting work at noon on Friday, Mr. Sweat returned to his home and was inactive the remainder of that day and all of Saturday and the entire weekend with the exception of driving the car to the cemetery here in Knoxville where his mother-in-law was buried. He was unable to return to work on Monday because of this distressing condition in the chest which caused smothering and difficult or short breathing.

Mr. Sweat returned to work on Tuesday against the advice of his wife and at a time when he was physically unable to do so because of this smothering and irregular breathing condition. He returned to work because he was afraid that someone would take his place if he did not report to work on that day.

The fact that he returned to work because he was afraid he would lose his job if he did not show the pressure that is on the citizen in the age in which we live.

Upon returning to work on Tuesday he took his place as a member of the crew and worked in the usual manner. The members of the crew who have testified in the case were of the opinion that the work was lighter that morning than it had been on any other morning that the crew had worked. This may be so but it does not mean by any means that the work was light. The work is never light for a person who digs post holes six feet deep and shovels the dirt in when it is wet and after having shovelled the dirt into the hole tamps the dirt with a post hole tamper. Otis Sweat did work of that nature on the morning preceding his death in the early afternoon.

Mr. Sweat reported for work about seven or seven-thirty in the morning and was taken from the place here in Knoxville on Western Avenue where the crew was usually picked up a distance of 10 or 14 miles to the Tazewell Pike area where the work was to be done.

After the members of the crew assembled the derrick which was attached to the truck and which was used for the relocation of the poles, in which Otis participated, they dipped water out of two of the post holes that had been dug the day previous and left overnight. Otis participated in the dipping of water, helped shovel the wet dirt into the post holes into which the poles were placed

that morning, and in addition helped fill the trench along which the poles were moved preparatory to being placed in the new location. In addition he helped tamp the dirt that was placed in these post holes.

Otis made no complaints of his condition during the entire morning that he worked. He was not a person accustomed to making complaints. He worked for practically four and a half years for Wright & Lopez, and his foreman stated that he had never heard him make a complaint during the entire period that he worked. The foreman further stated he was one of the best workers; he was not the complaining kind.

This Court is of the opinion that he worked that Tuesday morning in great distress from the shortness of breath and smothering spells that he had because of the sick heart although he did not make known his condition to any of his fellow employees.

Having worked from early morning until 12:00 o'clock noon, the crew knocked off for dinner, and as was the custom travelled a distance of from one to two miles from the location of their work to a grocery store where Otis and his foreman purchased and ate some Vienna sausage, pork and beans, crackers, and a soft drink. The other members of the crew ate the lunches which they had brought to work.

After Otis finished his lunch he took the crackers that were left to the truck, some 100 feet away, to be used for lunch the following day. This shows that Otis had no idea, and this is another pathetic feature of the case, of the seriousness of his condition at that time. He was saving food for the lunch which he expected to eat the following day.

Having taken the crackers to the truck he returned to a bench where he sat for a short time. This bench was some 20 to 30 feet from the place where the other members of the crew were sitting in the grass laughing, talking and carrying on pleasant conversation. The fact that Otis was away on the bench by himself indicates to this Court that he was not feeling good at that time.

In a very short time he keeled over from the bench on which he was sitting to the ground and some of the members of the crew immediately discovered that he was in serious trouble. He died as he keeled over from the bench or soon thereafter.

The three doctors who have testified in behalf of the widow in this case, say unconditionally that the work which Otis Sweat performed on Tuesday morning of the day of his death was the primary cause or the contributing cause of his death.

The doctor who testified for the defendant does not disagree with the opinion of the other three doctors. Although the doctor who testified for the defendant stated on direct examination that he was of the opinion that there was no causal relation between the work of Otis and his death, upon cross examination he stated that if Otis suffered with the symptoms which were described by his widow which began on Thursday and continued to the date of his death and which have heretofore been mentioned, that the work which he did on Tuesday morning would have been very poor treatment for a heart that was in the condition of Otis' heart.

Medical testimony is not required in a case of this kind to show that there was a causal connection between Otis' work and his death. The symptoms that were displayed by Otis and described here by his widow and supplemented by the autopsy made by Doctor Monger, show beyond question that Otis' heart was in a diseased condition. The technical name of the condition of his heart as described by the doctors is infarct, which means that a portion of his heart was dead.

The hard work which he did on Tuesday required this diseased heart to work and the diseased heart was not able to do the work that was required by the physical labor that Otis performed. This work which Otis did with the diseased

heart caused the heart to dilate to the point where it could not dilate any more, and as stated by one of the doctors it stopped—it could not work any more and that was the cause of his death.

The appellate courts of Tennessee have held in many cases that where a person with a diseased heart engages in work involving exertion or a strain that brings on a heart attack, or which aggravates a diseased condition of the heart causing either disability or death, that the person suffering the disability is entitled to recover under the Workmen's Compensation Law, and in the event of death the dependent of the person is entitled to recover benefits under the Workmen's Compensation Law; that death brought on by exertion or strain while at work is an accident within the meaning of the Workmen's Compensation Law. Patterson Transfer Company v. Lewis, 195 Tenn. 474, 260 S.W.2d 182; Lay v. Blue Diamond Coal Company, 196 Tenn. 63, 264 S.W.2d 223; Gunning v. Mead Corporation, D.C., 143 F.Supp. 35.

The Gunning case originated in the Greeneville division of this court and numerous cases involving principles applicable to the instant case are cited in that opinion. See also, Sage v. Tennessee Eastman Corp., D.C., 98 F.Supp. 893, along the same line.

If it were necessary to decide this case on inferences alone, plaintiff would be entitled to recover, for the most reasonable inference that can be drawn from the circumstances surrounding Otis' death is that such death was caused by the exertion or strain involved in the work which he did on the day of the death. See Howell v. Charles H. Bacon Co., D.C., 98 F.Supp. 567.

But as previously indicated, it is not necessary to base a decision in this case on the most reasonable inference because doctors who have testified in the case have given as their opinion that the primary cause of the death, or the contributing cause, was the work of Otis Sweat on the date that the death occurred.

In summary, the Court finds and holds that Otis Sweat had a diseased heart which started at least on the Thursday preceding the Tuesday of his death, and possibly much longer previously, and that the work in which he engaged on Tuesday morning was the primary cause of his death or aggravated the diseased condition of his heart which in turn caused his death.

Let an order be entered in accordance with the findings herein.