**Kittie Lee JOHNSON**

v.

**AETNA CASUALTY & SURETY COMPANY.**

**Civ. A. No. 3736.**

United States District Court
E. D. Tennessee, N. D.
June 4, 1959.

O'Neil, Jarvis, Parker & Williamson, Knoxville, Tenn., for plaintiff.

Key & Lee, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

Mrs. Kittie Lee Johnson has sued the defendant Aetna Casualty & Surety Company as workmen's compensation carrier for Carbide & Carbon Chemicals Company, Oak Ridge, to recover benefits under the Workmen's Compensation Law of Tennessee, T.C.A. § 50–901 et seq., as a result of the death of her husband, Mr. Johnson, which occurred on July 29, 1958 from a coronary occlusion.

It is the theory of the plaintiff that the death arose out of and in the course of Mr. Johnson's work as a result of an accident within the meaning of the Workmen's Compensation Law.

It is the theory of the defendant that there was no causal connection between the death of Mr. Johnson and his work for the Carbide & Carbon Chemicals Company.

The theories of the respective parties require an examination of the circum-

stances surrounding the death of Mr. Johnson. He had worked for Carbide & Carbon Chemicals Company in its electrical department for approximately four years prior to July 29, 1958. He lived at Harriman, Tennessee, which was between 15–20 miles from the place of his work. He used his automobile as a means of transportation to and from work. He was 44 years of age at the time of his death and left a widow and four children of tender ages as his dependents. His working hours were from around 8 o'clock a. m. until 4 p. m. with the usual lunch hour. It is assumed by the Court that a certain period of time was, taken off for lunch although there is no testimony on the subject.

On July 29, 1958 the deceased traveled from his home to his work in the usual manner, but around breakfast time he complained of sinus trouble and other illness to his wife. Upon leaving the breakfast table he went into the living-room and sat down and bent over to tie his shoe and immediately following that movement and straightening up he put his hands on his breast and told his wife that he was having pains in his breast and having difficulty in breathing. His wife told him that he was not able to go to work and tried to persuade him to stay away from work that day, but he responded to her request by saying that he would lose his job if he did not report for work and that he felt he must work.

So it was under this background that he reported to work on his last day on earth. He parked his car that morning in the usual parking lot and walked a distance to his work of anywhere from 150 to 300 feet, some parts of which were upgrade. Soon after he started to work physical trouble developed that caused him to walk down some steps to the carpenter shop where he asked a friend to take him to the dispensary, which was a quarter of a mile away. This friend took him in a pickup truck to the dispensary where he was examined by Dr. Smith.

At that time he was having a tingling sensation in the fingers, pains in the arms and shoulders, in the sub-sternal region and possibly other regions, all of which caused Dr. Smith to have made an electrocardiogram. At that time his blood pressure was 150/90, which, according to the medical testimony, is not too far out of line but which may or may not suggest trouble in the heart. The electrocardiogram did not show any irregularity of consequence. Dr. Smith accordingly permitted the deceased to return to his work after he stayed in the dispensary about two hours, or to be more exact, from 8:41 a. m. to 10:27 a. m. The rest presumably had caused his blood pressure to go down to 130/76 within a period of about two hours.

There is testimony to the effect that if a person is having a heart attack that an electrocardiogram will not always show irregularities of the heart during the attack, or for several hours subsequent to the attack. Anyway, there was nothing in the electrocardiogram that caused Dr. Smith to believe that Mr. Johnson was not able to return to work and perform his duties in the usual manner.

Some subsequent events show that Mr. Johnson should not have returned to work under the conditions that existed while he was in the dispensary. Of course, hindsight is almost always better than foresight, and if Dr. Smith could have looked backward on the situation as Dr. Lane did during this trial, the reasonable inference is that he would not have permitted Mr. Johnson to return to his work on that date but would have placed him in an ambulance and caused him to be taken to a hospital. Subsequent events have shown that the deceased should have been placed in bed and should have been held there in complete rest without being permitted to use his arms, legs, or any part of his body for a period of days. It is common knowledge that that is the usual treatment of heart patients in the condition in which Mr. Johnson was in on the date that he died, and the knowledge is so common that the Court can very well take judicial knowledge of it.

The deceased, after being released by Dr. Smith to return to work, started to work around 10:30 a. m. and continued to work, except the period he was off during the lunch hour, until 2:17 p. m. when he died. He was at work on a stool at the time he died. He fell off of the stool at the time, or about the time, that he quit breathing and cut a gash above his right ear.

The work that he did on the day of his death was not unusual. He handled some light bulbs preparatory to placing them with a fellowworker who was at lunch at the time he received his orders from his superior to attach the light bulbs at their proper places. He also worked on an element to a water heater some little time and that was the object he was working on at the time of his death.

The proof does not disclose the other jobs that he did from 10:30 a. m. to around 2:17 p. m., but the record indicates that he did nothing other than ordinary work during this period of time. Although there is no direct proof on the subject, the reasonable inference is that he walked up flights of stairs having fifteen steps or landings, which added to the strain upon his heart in its grave condition.

It is on this set of facts that the legal issue arises as to whether or not there was an accidental death that was causally connected with the work of Mr. Johnson with the Carbide & Carbon Chemicals Company.

The defendant contends that there was not any causal relation between the work and the death. In support of this contention, defendant cites the case of Wilhart v. L. A. Warlick Construction Co., 195 Tenn. 344, 259 S.W.2d 655. In that case the employee died of apoplexy while on duty. He weighed 250 pounds although less than six feet tall, and about five months prior to his death he was examined and found to be suffering with high blood pressure.

In that case the trial court held that there was no causal relation between the work the employee was doing, the apoplexy, and the resulting death. It held there was no accident and denied compensation. The Supreme Court of Tennessee, speaking through Mr. Justice Burnett, held that there was substantial evidence to support the findings and conclusions of the trial judge and therefore affirmed the holdings of the lower court.

In that case, after handling boards and planks for an hour and a half, the employee was starting after some rope at the time of the stroke, which activity appears to have involved no strain. The doctors testified, in substance, that if he had been doing anything that caused a strain the blood vessels would have popped at the time of the strain "but it does not pop from a strain after the strain is non-existent."

The Court is of the opinion that this decision does not control the case at bar. The Supreme Court refused to reverse the trial court because it felt there was substantial evidence to support the judgment.

The plaintiff relies upon the line of cases represented by Patterson Transfer Co. v. Lewis, which is cited at 195 Tenn. 474, 260 S.W.2d 182 (same volume in which the Wilhart, supra, case is cited). In that case the Supreme Court of Tennessee, speaking through Mr. Justice Gailor, uses this significant language:

"* * * If an ordinary exertion or usual strain produces an unusual result, is the resulting injury by accident? *It is now well established that ordinary and usual exertion at work resulting in injuries is compensable.* (Emphasis added.) Awards have been upheld on the basis of accidental injury where the strain in tightening a nut in the ordinary manner caused an aneurysm to break. (Citing case); where unloading bags of cement caused cerebral hemorrhage (citing cases); coronary thrombose from ordinary lifting (citing case)." 195 Tenn. at pages 478, 479, 260 S.W.2d at page 184.

Returning now to the facts of the case under consideration, the most reasonable inference to be drawn from this proof is that Mr. Johnson's heart trouble started on the morning of July 29, 1958, some time before he left his home for work, it improved to some extent while on his way to work, but after he reached his work and had worked for a time the trouble either began anew or continued to get worse and became so bad that he was required to go to the dispensary. After staying in the dispensary for approximately two hours, and while at rest, his condition improved to the extent that he was able to return to his work. Some time after he returned to his work his condition became much worse and he died around 2:17 p. m. His body was in such a depleted condition from the time that he had his severe trouble beginning around 8:40 a. m., that any exertion, even the lifting of his arms or legs, was detrimental to his condition. The walking back to his bench and the climbing of the steps after the visit to the dispensary, and the work which he did, even though it was not unusual, aggravated his sick heart at a time it could not stand any more exertion of any kind.

In the opinion of the Court, and the Court finds as a fact, that the work which Mr. Johnson did on July 29th either caused or aggravated his heart condition which accelerated and resulted in his death and that his dependents are entitled to recover under the Workmen's Compensation Law of Tennessee.

The Court has dealt with this question on one or more occasions and held that death under such or similar circumstances was covered by the Workmen's Compensation Act. Gunning v. Mead Corporation, D.C., 143 F.Supp. 35, affirmed by 6th Circuit in 248 F.2d 878. This holding is in line with the cases of Nashville Pure Milk Co. v. Rychen, Tenn.1958, 322 S.W.2d 432, and Coleman v. Coker, Tenn.1959, 321 S.W.2d 540. The recent decision of this Court in Sweat v. United States Fidelity & Guaranty Co., 1959, 169 F.Supp. 155, is pertinent. In that case this Court said, in part:

"The appellate courts of Tennessee have held in many cases that where a person with a diseased heart engages in work involving exertion or a strain that brings on a heart attack, *or which aggravates a diseased condition of the heart causing either disability or death,* that the person suffering the disability is entitled to recover under the Workmen's Compensation Law, and in the event of death *the dependent of the person is entitled to recover benefits under the Workmen's Compensation Law; that death brought on by exertion or strain while at work is an accident* within the meaning of the Workmen's Compensation Law." Page 158. (Emphasis supplied.)

In the Sweat case the exertion was much greater than was the exertion in the present case. However, any kind of exertion by Mr. Johnson at his work was too much for his heart to withstand in its then grievously impaired condition.

Let an order be prepared in conformity with the views expressed in this memorandum.