**Icelona B. BLAIR**

v.

**ALUMINUM COMPANY OF AMERICA.**

**Civ. A. No. 4312.**

United States District Court
E. D. Tennessee, N. D.

Jan. 4, 1962.

O. M. Tate, Jr., Knoxville, Tenn., for plaintiff.

Goddard & Gamble, Maryville, Tenn., for defendant.

ROBERT L. TAYLOR, Chief Judge.

This is an action to recover benefits under the Workmen's Compensation Law of Tennessee.

Mrs. Icelona Blair, who is the widow of Theodore T. Blair, a former employee of the defendant, Aluminum Company of America, is the plaintiff. Her husband died on March 15, 1961 as the result of a severe heart attack that occurred while he was in the performance of his duties as a pot attendant in the smelting division of the defendant at Alcoa, Tennessee. Deceased was born August 10, 1908 and was around 53 years of age at the time of his death. He had worked as a pot attendant for several years. His employment in that capacity and possibly other capacities for the defendant extended over a much longer period of years, possibly as many as twenty years.

Deceased was first seen in 1954 or 1955 for gall bladder trouble by Dr. George T. Novinger, a general surgeon of Knoxville and who has been engaged in general practice of medicine, specializing in surgery, in Knoxville since 1952. Dr. Novinger was first connected with the Acuff Clinic in Knoxville. The patient made a successful recovery from the

gall bladder trouble and, as previously indicated, continued his employment with the defendant.

In 1957, Dr. Novinger examined Mr. Blair because of complaints of severe pain in his back at which time he was placed in the hospital. To be exact this was in August, 1957. He also apparently recovered from this trouble. However, in a few days after he was released from the hospital he was again admitted because of poor circulation in the right leg that caused severe pain. On this occasion he was seen and examined by a number of physicians, including Drs. Kennedy, Reeder, Southworth, Murray and Novinger. He was finally discharged from the hospital but was suspected of having a dissecting aneurysm of the aorta. The cardiograms at that time did not show any injury to the heart but he had a long period of convalescence because of bad circulation in the right leg. He was off from work about five months.

On January 1, 1958, Dr. Novinger gave the patient a statement for use with his employer in returning to work which read:

"Mr. T. T. Blair may return to work, but will be under strict observation next six months."

Mr. Blair returned to work and continued to work until he had his heart attack on March 13, 1961 which resulted in his death approximately 48 hours later. Shortly after he was admitted to the Baptist Hospital on March 13, 1961, Dr. Herbert F. White, an internal medicine specialist of Knoxville who is qualified to diagnose and treat diseases of the heart, was called into the case by Dr. Novinger as a consultant. Dr. White examined and treated the patient until his death. Dr. White has testified by deposition in the case and has given as his opinion that Mr. Blair sustained an acute posterior myocardial infarction which caused his death; that "the cause of the acute myocardial infarction was undoubtedly due to coronary disease." He was of the opinion that the cause of the heart attack was heavy exertion in which the de-ceased engaged in the performance of his duties at the time of his attack.

A chart has been filed in the record showing that Mr. Blair went on duty at 2 p. m. on the day he was stricken and gave pots 1 through 4 the scheduled workings; at 2:45 he gave pots 5 through 8 the scheduled workings; at 3:45 he gave pots 9 through 12 scheduled workings; at 4:45 he gave pots 13 and 14 scheduled workings; at 5 p. m. he worked on pot No. 1 on anode effect; at 5:30 he worked on pot No. 2 on anode effect; at 5:45 he gave pots 3 and 4 scheduled workings; at 6:45 he gave pots 5 through 8 scheduled workings; at 7:30 p. m. he worked pots 10 and 12 on anode effects; 7:45 he gave pots 9 and 11 scheduled workings, and at 8:45 he gave pots 13 and 14 scheduled workings.

Two fellow employees of Mr. Blair have described what is meant by "scheduled workings" on the pot and workings that are classified as "anode effect". Photographs were introduced showing the pots with their hoods closed. Two rakes that are used by the workmen to manipulate the ingredients of the pot are shown in one of the photographs. The work includes the use of the rakes, which weigh around 112 pounds each and which have attached thereto a piece of metal at the end described as a "T" and which is around 2 or 3 feet in length. In addition to the use of the rakes, the workmen use a crowbar to break the crust that is formed on the top of the pot at places where the rakes cannot be used.

The witness Miller described in minute and intelligent manner what is meant by anode effect in the pots.

The effect of the testimony of all who testified on the subject is that pot attendants do assigned work in tending to the pots which involves a considerable amount of exertion. The tenor of the testimony of the workmen is that the work is very strenuous, while the testimony of Mr. Miller is that the work is simply ordinary work insofar as it involves physical exertion. Mr. Miller stated, in substance, that the tilting of the rake as it is located on what has

been described as a "fulcrum" involved a lift of around 20 or 30 pounds by the workman.

The place where the workmen work on and around the pots becomes very hot at times, particularly in hot weather or rainy weather. This is understandable since the temperature in the pot itself is around 1800 degrees Fahrenheit.

Doctors London and Crowder examined the pots where the deceased worked sometime after his death and observed other pot men doing similar work. They did not think that the work involved extraordinary exertion. Dr. London compared it with shovelling sand or gravel at short intervals.

The sole issue for determination in the case is whether there was any causal connection between the work performed by Mr. Blair and his heart attack which resulted in his death. His widow contends that the attack was precipitated by the "stress, strain and exertion of his duties and occupation and by the fumes and heat in which he worked and to which he was subjected while working."

Defendant contends that there was no causal connection between his work and his heart attack. In so contending, the defendant asserts his sickness and death did not arise out of and in the course of his employment with the defendant.

Defendant further asserts that his death was not caused or precipitated by the duties that he was required to perform for it or by the conditions under which he worked.

The issue as stated in the pre-trial order is thus: "Did the death of the deceased result from an accident arising out of and in the course of his employment at the Aluminum Company of America."

■ If there was causal connection between deceased's heart attack and his work, then his disability and death resulted from an accident that arose out of and in the course of his employment.

In the case of Howell v. Charles H. Bacon Company, 1951, D.C., 98 F.Supp. 567, aff'd 6 Cir., 197 F.2d 333, it was held that the medical testimony warranted an inference that constant pain, worry, and nervous tension resulting from a fractured heel bone in a fall from a broken scaffold aggravated a pre-existing coronary sclerosis and hastened the death of the employee from a coronary thrombosis some three months later and that the employee sustained an accident resulting in his death within the meaning of the Workmen's Compensation Law.

The case of Phillips v. Eureka Casualty Company, D.C., 133 F.Supp. 630, aff'd 6 Cir., 233 F.2d 743, involved a claim under the Workmen's Compensation Act by the widow of deceased who on the day of his death loaded 18 tons of coal while shovelling from a kneeling position and was found dead at his post in the mine. The deceased was in apparent good health on the day that he went to work. The Court held that the reasonable inference from all the circumstances surrounding his death was that he died of over-exertion and that his widow was entitled to benefits.

The case of Gunning v. Mead Corporation, D.C., 143 F.Supp. 35, aff'd 6 Cir., 248 F.2d 878, involved a claim for compensation under the Workmen's Compensation Law because of a heart attack and the resultant death of the employee. The proof showed that the employee for sometime had been afflicted with arteriosclerosis and a heart condition defined as angina and that the stress of his regular work constituted an accidental injury arising out of and in the course of his employment.

The case of Sweat v. Fidelity & Casualty Company, D.C., 169 F.Supp. 155, aff'd 6 Cir., 272 F.2d 943, involved a claim of a widow of a deceased employee who sustained a heart attack while eating his lunch after having dug telephone pole holes in the performance of his duties. It was held that the diseased condition of the workman's heart had been aggravated by the exertion of his work and his death resulted from an accident arising out of and in the course of his employment.

The case of Johnson v. Aetna Casualty Company, D.C., 174 F.Supp. 308, aff'd 6 Cir., 278 F.2d 200, involved a claim for the death of an employee as the result of coronary occlusion. The deceased's heart trouble started before he left home on the day he was stricken but it improved to some extent while he was on his way to work, it began anew while he was on the job and continued to get worse. The proof showed, and the Court found, that the exertion of his work aggravated his heart condition and that his widow was entitled to recover.

In the case under consideration, Drs. White and Novinger have stated that it was their medical opinion that the physical exertion of Mr. Blair, while in the performance of his duties as an employee of the defendant, precipitated his heart attack.

The effect of Dr. London's testimony is that the condition of a person's heart controls whether he should engage in work which involves exertion. If the patient has recovered from his coronary condition and can work without ill effects, Dr. London was of the opinion that he should work. He was of the opinion that the work performed by Mr. Blair on the night of his attack did not involve sufficient exertion to precipitate the attack. But the difficulty with this testimony is that Dr. London did not know the condition of Blair's heart on the night of March 13, 1961 or some hours prior to his attack. The same is true with respect to the testimony of Dr. Crowder. These men are eminent in their field but they never examined or treated Mr. Blair at any time.

The Court is convinced beyond a doubt from the testimony in this record that Mr. Blair had a diseased heart when he entered on the performance of his duties on March 13, 1961.

The Court is also convinced and finds as a fact that the exertion of his work on March 13, 1961 either aggravated his diseased heart condition or his physical disability, or caused the attack which occurred around 9:10 p. m. on March 13, 1961 and which resulted in his death two days thereafter.

The Court is further of the opinion and finds as a fact that Mr. Blair sustained an accident arising out of and in the course of his employment and that his widow, the plaintiff in this case, is entitled to benefits under the Workmen's Compensation Law of Tennessee, including medical expenses and hospital bills as provided for in the Act.