## Hazel V. OBENSCHAIN

v.

## AMERICAN MUTUAL LIABILITY INSURANCE COMPANY.

### Civ. A. No. 4380.

United States District Court
E. D. Tennessee, N. D.
June 19, 1962.

Kramer, Dye, McNabb & Greenwood, Knoxville, Tenn., for plaintiff.

Taylor & Templeton, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, Chief Judge.

Mrs. Hazel V. Obenschain sued the defendant, American Mutual Liability Insurance Company to recover workmen's compensation benefits under the Tennessee law for the death of her husband, who was, for some seven or eight years, a truck driver for Blue Ridge Transportation Company of Knoxville, Tennessee. Mrs. Obenschain has two children, one being 20 years of age and the other 14 years of age, both of whom are dependents.

Mr. Obenschain died on March 24, 1961 in the afternoon around 3:00 or 3:30 p. m. In addition to his truck driving duties, he washed trucks at the terminal of his employer on weekends in order to supplement his earnings. His regular run was from Knoxville to Chattanooga on Lookout Mountain at the edge of Georgia where he filled his truck, or caused it to be filled with petroleum products, including gasoline, for transportation from Chattanooga to Oak Ridge, Tennessee, where the products were deposited in storage tanks and after this was done deceased brought his truck to Knoxville.

It was his practice to report for duty around midnight or shortly thereafter. Accordingly, on the day of his death he reported to his employer's terminal in Knoxville and left Knoxville around 3:00 a. m. and arrived in Chattanooga about 6:00 a. m., where his truck was filled with gasoline and driven to Oak Ridge where he arrived about 10:00 a. m.

After he returned from Chattanooga and while he was on his way to the Oak Ridge bulk storage plant to deliver his fuel, he met with an accident on the Oak Ridge Turnpike about nine or ten miles from the bulk plant. He told Mr. William A. Alexander about his accident between 9:00 and 11:00 a. m.

Counsel for the plaintiff insists that what he told Mr. Alexander about the accident was competent as evidence under the res gestae rule. His conversation with Mr. Alexander occurred some 25 miles after the accident.

Counsel for the defendant objects to the consideration of the testimony on the ground that such testimony falls within the hearsay rule and is, therefore, not competent for any purpose.

The Court has some doubt as to whether the details of the conversation are competent as substantive testimony to prove the facts contained in the conversation, and for that reason does not base

its conclusions upon any part of the conversation between the deceased and Mr. Alexander with respect to how the accident happened or the course that the tractor-trailer, which he was driving, traveled at the time of the accident.

There is proof in the record introduced by both sides that plaintiff's intestate had an accident on the morning of March 24th. This fact was brought out by counsel for the defendant in his cross-examination, and counsel, in his argument, referred to it by saying, in substance, that the accident was of small consequence as plaintiff's intestate was asked by Mr. Warwick, his dispatcher, and possibly Mr. Alexander, if he was asleep at the time of the accident and whether or not such sleeping caused the accident. There is some strength in counsel's position that if the accident had been of great consequence the parties would not have referred to it in such a jocular manner.

The truck that plaintiff's husband drove was a large tractor-trailer rig which was used, as previously indicated, to transport gasoline products. This truck would hold about 6,000 gallons of gasoline. The proof shows that gasoline weighs about 6.6 pounds per gallon. The length of the rig was about 40 feet. There is proof to the effect that the driving of the truck did not require much more effort or attention than the driving of an ordinary automobile. There is also proof to the effect that such driving involved strenuous work.

Defendant denies that driving of the tractor-trailer was hard or heavy work. Defendant says there was nothing unusual or strenuous in the work that plaintiff's intestate did on the date of his death or immediately prior to that time. Defendant says that the plaintiff's husband left the terminal about 2:00 or 3:00 in the morning and drove to Chattanooga. The truck travel log shows that he entered on his work at midnight and that he left Knoxville at 3:00 a. m. and arrived in Chattanooga at 6:00 a. m., left Chattanooga at 6:30, arrived at Oak Ridge at 9:30 a. m., and that he left Oak Ridge at 10:00 a. m. and arrived in Knoxville at 11:00 a. m.

The sole issue for the decision of the Court is whether there was any causal connection between the death of plaintiff's intestate and his work.

Mr. Obenschain had pain in his chest on March 4th to the extent that he visited Dr. Novinger's office in Knoxville. He contacted Dr. Novinger the following Monday, on March 6, when he was examined at the doctor's office. He was in severe pain on March 4th. On March 6th, the doctor told him to go home and take it easy. He previously had been hospitalized as a mild diabetic. This occurred in 1948. In addition to his mild diabetic trouble, he was suffering with arteriosclerosis, and these physical troubles made him more susceptible to heart trouble and this was one of the reasons that Dr. Novinger told him to stay off from work.

Mr. Obenschain was again examined by Dr. Novinger on March 17th and was advised again to stay off from work for a few additional days, or at least a week. He did not take the doctor's advice as he returned to work, and worked, on March 21st.

As previously indicated, he also worked on the night and day of March 24th, the day he died.

Patrolman Goodin, an Oak Ridge patrolman, testified in detail as to damage his truck did to the guard rail on the Oak Ridge Turnpike at the time of his accident on the morning of the 24th. As the truck travel log indicates, he returned to his employer's terminal at 11:00 a. m. on the morning of the 24th and was off duty for the rest of the day.

The testimony of Mr. Warwick, the dispatcher for his employer, indicates that there was nothing eventful that occurred after he returned from Chattanooga and Oak Ridge. He stayed around the terminal for two or three hours, or until 2:00 or 2:30 in the afternoon and talked to Mr. Warwick and others in his usual way. He did not complain about

being sick. Mr. Warwick was to exchange one rig for another rig which was located in the direction of Magnolia Avenue here in Knoxville, and Mr. Obenschain volunteered to drive this truck in making the exchange. His offer was accepted and he drove the truck about a mile where he exchanged it for another and brought the other truck back to the terminal. After this job was completed, he walked to the parking lot which is used by employees to park their cars and where his car was parked, and took possession of it and drove it to his home on Linden Avenue about a mile from the terminal.

Mrs. Obenschain was of the opinion that he returned home between 1:30 and 2:00 p. m. on Friday, March 24th. Upon his returning home, he went into the bathroom and then to the kitchen where he consumed about the usual amount of food after making a trip to Chattanooga. This meal was called breakfast although it was eaten in the early afternoon. He told his wife at that time that he was not feeling well and did not want much to eat. After eating breakfast he went to sleep in a chair in the living room. After he had slept some several minutes the mail man came and his wife gave him a letter from his brother, which he read. After reading this letter, he arose from his seat and started toward the stove and fell backward. It was at that time that he passed away. Mrs. Obenschain fixed the hour at around 3:30 p. m.

Doctor Novinger, who is a heart specialist and who was his physician, described him as a man who was slow to complain, a man who felt that he had to work to make a living for his family and who worked at times when he probably was not physically able to work. This was one of the explanations for his actions after making the trip to Chattanooga, in and around the terminal, of not complaining or not saying anything about being sick.

Doctor Novinger is of the opinion that he had some kind of a heart attack, probably a slight one, on March 4th, 1961. Up to that time nothing had been found wrong with his heart. Doctor McCullough examined him on numerous occasions and never found anything wrong with his heart. The following Monday, Dr. Novinger examined him and even at that time he was not certain there was anything wrong with his heart although he suspicioned that something may have been wrong with it. His disability was such as to prevent him from returning to work.

Doctor Novinger is of the opinion that his work on March 24th aggravated his heart condition and either caused or hastened his death. He was of the opinion that he had a slight heart failure at the time of his accident on the morning of the 24th, but he was not sure.

Doctor McCullough stated that heart trouble required rest and drugs and limited activity. He testified that plaintiff was a man about 5 feet 8 inches and weighed some 212 pounds. He stated that it appeared his heart attack had been coming on for some time and he did not think his work had anything to do with it. He stated that there were two causes for the kind of heart trouble with which he suffered, namely, thrombosis and cholesterol and that he thought natural progression caused plaintiff's heart failure. He also stated that he was of the opinion that his work could have hastened his death. In that connection, he stated that if he could have x-rayed and received treatment when he had his first trouble on March 24th, in all probability his life would have been saved.

The last time this Court reviewed these heart cases was in the case of Icelona Blair v. Aluminum Company of America, D.C., 217 F.Supp. 471. The decision was made in that case January 4, 1962. In the memorandum opinion, numerous cases were reviewed beginning with the case of Howell v. Charles H. Bacon Company, D.C.1951, 98 F.Supp. 567, affirmed 6 Cir., 197 F.2d 333, and continuing with Phillips v. Eureka Casualty Company, D.C., 133 F.Supp. 630, affirmed 6 Cir., 233 F.2d 743; Gunning v. Mead Corporation, D.C., 143 F.Supp. 35,

affirmed 6 Cir., 248 F.2d 878; Sweat v. United States Fidelity & Guaranty Company, D.C., 169 F.Supp. 155, affirmed 6 Cir., 272 F.2d 943, and Johnson v. Aetna Casualty & Surety Company, D.C., 174 F.Supp. 308, affirmed 6 Cir., 278 F.2d 200.

No good purpose will be served by reviewing the facts contained in each of those cases except to say that in each case a death occurred by reason of a heart condition and there was a causal connection between the work performed by the deceased and his death. The employee's work in those cases was shown to have involved stress, strain or exertion of some character. Since many of those cases were decided, the Supreme Court of Tennessee has had before it the same subject in the case of Hagewood v. E. I. Du Pont Nemours et al., 206 Tenn. 239, 332 S.W.2d 660.

In that case, the Court, speaking through Chief Justice Prewitt, held that "It was essential to the petitioner's case to prove that her husband sustained an accidental injury in the course of his employment during his last day at work. Dr. Gammell examined him on that very day even though petitioner took the deposition of his nurse, Miss Staub, who checked the deceased and turned him over to Doctor Gammell, the petitioner saw fit not to introduce the testimony of that physician but instead relied upon Doctor Wilson, who did not see the deceased until after his death Doctors Core and Adams, who never examined him at any time."

The Court held that there was material evidence to support the decree of the chancellor that petitioner had failed to show a causal connection between her husband's work and his death. But the Court in that case quoted from 99 C.J.S. Workmen's Compensation § 177, page 604, as:

"* * * the mere manifestation of a heart condition without any proof of strain or overexertion at work does not show an accidental injury even though the development of the heart disease may have been hastened by the employee's usual and ordinary work."

The proof in this case shows that the deceased on the day of his death was undoubtedly involved in a strain or overexertion in connection with the incident with his truck on the Oak Ridge Turnpike, and in the opinion of a competent heart doctor such strain or overexertion either aggravated his diseased heart condition or caused his heart failure.

In the opinion of the Court, the preponderance of the evidence shows causal connection between Mr. Obenschain's work and his death. The proof shows that his work either aggravated his heart condition or caused heart failure which resulted in his death.

The Court, therefore, holds that plaintiff's intestate's death arose out of and in the course of his employment as a result of an accident within the meaning of the Tennessee Workmen's Compensation Law and the applicable decisions interpreting same.