MORRISTOWN CHEST COMPANY

*v.*

MRS. DORIS MORGAN

370 S. W. 2d 513.

(*Knoxville,* September Term, 1963.)

Opinion filed September 11, 1963.

W. E. (BILL) BOWMAN, Greeneville, for petitioner.

ROBERT R. CAMPBELL, Knoxville, WM. H. INMAN, Morristown, HODGES, DOUGHTY & CARSON, Knoxville, TAYLOR & INMAN, Morristown, of counsel, for respondent.

Mr. Justice Dyer delivered the opinion of the Court.

This is a Workmen's Compensation case wherein the Trial Judge has awarded full compensation benefits to the petitioner widow, Mrs. Doris Morgan for the death of her employee husband. The award is against the defendant employer, Morristown Chest Company, who has seasonably appealed to this Court.

The deceased employee white, male, age thirty was employed by defendant as a ripsaw operator. This job required deceased to take pieces of lumber weighing from three to not over twenty pounds from a factory wagon or cart, and place the lumber on the saw table in such a way the rollers on the saw table engaged the boards carrying them through the saw table. It would take approximately an hour to run the contents of the wagon, and then the wagon would have to be replenished, which required deceased pushing the wagon about forty feet to obtain the lumber. The loaded wagon weighed about one hundred pounds, and deceased had a helper in pushing the wagon.

On the day in question, April 10, 1962 deceased was working the night shift which began about 4:00 P.M. and

ended shortly after midnight. On this day deceased came to work in apparent good health, but after working about an hour complained of not feeling well stating he was sick in his stomach. Deceased with a fellow employee went into the restroom where he apparently became actively nauseated but returned to work. Shortly after this with the permission of his foreman he went home. Upon arriving home deceased called a doctor, who had him admitted to the local hospital.

Deceased was seen at the hospital by Dr. Robert L. Brown in the early evening of April 10th and complained to Dr. Brown of intense headache associated with nausea and vomiting. Later the same evening deceased developed a serious respiratory difficulty, lapsing into unconsciousness from which he never recovered. Deceased died April 20, 1962.

■ Defendant by their first assignment of error allege there was no evidence upon which a finding could be based, deceased sustained an accidental injury arising out of and in the course of his employment. The Trial Judge found as follows citing authority in support of his findings:

"The Court finds that prior to the death of the deceased he had a hemangioma of a cavernous type in the left cerebral hemisphere, same being a vascular tumor or tumor of the blood vessels, and that this tumor was in the left hemisphere of the brain.

"The deceased Morgan, was apparently in good health on April 10th 1962 when he started to perform his usual duties for his employer, and after he had gone to work and while engaged in doing the work, he sustained an injury by accident, arising in and growing out of his

employment by exertion in moving the lumber and wagon to the ripsaw and unloading the lumber and running it through the machine.

" 'When an employer employs a workman he takes him as he is and assumes the risk of having a weakened condition aggravated by some injury which might not hurt or bother a healthy or normal person. *Swift & Co. vs. Howard,* 186 Tenn. 584 [212 S.W.2d 388].'

"The Supreme Court in the case of *Patterson Transfer Co. vs. Lewis* [195 Tenn. 474], 260 S.W.2d 182, and approved in the case of *Lay vs. Blue Diamond Coal Co.* [196 Tenn. 63], 264 S.W.2d 233, held:

" 'It is now well established that ordinary and usual exertion at work resulting in injuries is compensable. Awards have been upheld on the basis of accidental injury where the strain in tightening a nut in the ordinary manner, caused an aneurism to break. By way of illustrating the justice and good sense of this rule, The Court, quoting from a Maine case, Brown's Case, 1924, 123 Me. 424, 123 A. 421, 60 A.L.R. 1293, said: If a laborer performing his usual task, in his wonted way, by reason of strain, breaks his wrist, nobody would question the accidental nature of the injury. If instead of the wrist it is an artery that breaks, the occurrence is just as clearly an accident.' "

The only medical evidence in the record is by the testimony of Dr. Robert L. Brown. An autopsy was performed revealing deceased died from the rupture of a hemangioma located on the left cerebral hemisphere. A hemangioma is a vascular tumor, or tumor of the blood vessels,

which generally exists at birth or shortly thereafter, and one of its principal characteristics is that it contains a large number of vascular spaces which are dilated and thin walled. Physical strain can cause a rupture of such tumor, and just how much strain would be required would depend upon the thinness of the walls of the vascular spaces. Such tumors could rupture spontaneously without any outside strain. Some of the questions propounded to Dr. Brown and his answers given are as follows:

"Q. Now Doctor, assume if you will that this patient went to work on this evening at 3:45, was experiencing no pain and was in apparently good health, that he was a ripsaw operator handling pieces of wood and tailing them through a rip saw, which could weigh from twenty pounds down to two or three pounds, that he picked those pieces of lumber up off of a wagon and passed them upon a saw table, and also in the course of his employment he was required to move a wagon containing this lumber, which would weigh approximately a hundred or more pounds, in your opinion Doctor would that be sufficient to constitute a sufficient strain on this cerebral tumor to cause it to explode?

"A. It is my opinion that the exertion of this type very well could be sufficient to produce rupture of a thin walled hemangioma.

"Q. Now Doctor, comparing the time the patient first experienced nausea and pain, until the time he had complete loss of his respiratory function, do you have an opinion Doctor as to whether or not this hemangioma, this rupture, was caused by leakage or by strain or accident which caused complete blowout of this particular vessel?

"A. In my opinion, based on the course of the case, the findings, and history, was that the patient had an initial leakage that occurred at work, an associated strain factor, and that the massive hemorrhage occurred some few hours after admission, after the patient had been hospitalized.

"Q. Could the work which has been described to you Doctor, that the patient had been doing, could that have attributed to that rupure of the hemangioma?

"A. Yes, in my opinion it would have contributed to the rupture of the hemangioma."

We think there is material evidence in the record to support the finding of the Trial Judge. We have here an employee with a serious physical handicap in that certain blood vessels in his head could rupture spontaneously, or with slight exertion. This employee reported for work on a job requiring some exertion in apparent good health and about an hour later these blood vessels did rupture. It was the opinion of the doctor familiar with the course of the case, the findings of the autopsy and the history of the onset of the rupture, that the exertion experienced by deceased on the job on this day contributed to the rupture of the hemangioma.

 Defendant by their second assignment of error allege there is no material evidence statutory notice requirements were fulfilled. Defendant in their answer set by notice as a defense, but did not include such in their motion for a new trial. The question of notice is one of fact and before assigning such as error in this Court on appeal same will have to be included in the motion for a new trial. *Mullins v. Tennessee Stave & Lumber Company,* 155 Tenn. 132, 290 S.W. 975.

Judgment affirmed.