Mrs. Bessie B. WHITEHEAD

v.

**ALUMINUM COMPANY OF AMERICA.**

Civ. A. No. 5138.

United States District Court
E. D. Tennessee, N. D.
March 3, 1965.

J. H. Hodges, Knoxville, Tenn., D. H. Rosier, Jr., Maryville, Tenn., for plaintiff.

Goddard & Gamble, Maryville, Tenn., for defendant.

ROBERT L. TAYLOR, Chief Judge.

This is a suit for workmen's compensation benefits under the law of Tennessee. Ed Whitehead, now deceased, and plaintiff's intestate, was an employee of the defendant, Aluminum Company of America, over a period of years and on December 12, 1962 he was engaged in his work in the shear room where rolls of aluminum of designated width and length came down a conveyor system where the rolls were cut off into sheets of a pre-determined length automatically.

In this operation, there is one man stationed at each end of the sheet so cut from the roll who picks up the sheets and stacks them on a table as they are cut from the roll. The deceased was one of these men.

Mr. Whitehead went to work at 6:00 o'clock in the morning and about 9:50 in the morning, while doing his work, he suddenly pushed the button that stops the operation of the machine, and a fellow employee at the other end came

around to see what was wrong. He learned that Mr. Whitehead was sick, dizzy, and started to slump to the floor. Another employee attempted to catch him before he fell to the floor without success. Whitehead, in falling, struck his head on the floor and as a result sustained a fracture of the skull on the right side. He was thereafter taken to the first aid station where respiration was given and subsequently was moved by ambulance to the Blount Memorial Hospital where he was placed under a breathing machine and lived for two days.

An autopsy was performed which showed slight softening in the area of the right basal ganglia. The vessels in the immediate vicinity was tortuous and thin; there was hemorrhage within the brain substance. The area of hemorrhage on the surface of the dura showed a moderate lympocytic infiltration.

The autopsy evidence pointed to a probable cerebral thrombosis of the basal ganglia followed by a fall with subsequent fracture of the right temporal bone and extradural hematoma.

Diagnosis from the evidence obtained from the autopsy by Dr. E. M. Kelman was (1) cerebral thrombosis, right basal ganglia, (2) extradural hemorrhage, right cerebral area, (3) fracture, right temporal bone, (4) bronchopneumonia, lower lobes.

Prior to this accident, deceased had had for several days chills and fever, dizzy spells and headaches. The accident occurred on December 12, 1962 and decedent died on December 14, or two days later, but the suit was not filed until November 6, 1964.

The widow, Mrs. Bessie B. Whitehead, says that the defendant advised her that it had investigated the accident and that nothing could be done about it—meaning that there was no liability, hence the reason for her not instituting suit sooner.

In the course of events Mrs. Whitehead contacted Mr. D. H. Rosier of the Blount County Bar, who, in collaboration with Mr. J. H. Hodges of the Knoxville Bar, instituted suit soon after Mrs. Whitehead contacted him.

It is the theory of the plaintiff that the accident and resulting death arose out of and in the course of Mr. Whitehead's employment within the meaning of the Workmen's Compensation Law. The defendant denies liability.

The defendant says, in substance, that there was no causal connection between the work of Mr. Whitehead and his accident and resulting death. It says that Mr. Whitehead's work was comparatively light within the meaning of the trade and did not require a great deal of energy in that the sheets of aluminum which he, along with his fellow worker, handled weighed only 14 pounds and that they were not required to lift the sheets but only required to slide them off of the conveyor belt onto the table.

The circumstances surrounding the accident are admitted by the defendant. That is to say, it is admitted that decedent became ill on the job and that he cut off the machine and started towards another employee saying, in substance, that he was blind and could not see, and that he fell to the floor and struck his head against the wooden block floor. Defendant says that his sickness or dizziness was neither caused nor aggravated by his work, that it was idiopathic and non-industrial.

Defendant admits that it had immediate notice of the accident and made an investigation of the matter and notified the plaintiff that in its opinion the death was not covered by the Workmen's Compensation Act. Defendant pleads affirmatively the one year statute of limitations provided by the Workmen's Compensation Law in bar of a recovery.

▮ The first issue, which is a legal one, is whether plaintiff's action is barred by the one year statute of limitations.

It is conceded by the defendant that it did not give notice to the Bureau of Workshop and Factory Inspection of the accident and that it did not express its willingness to pay compensation when

and if it was shown that the injury was covered by the Workmen's Compensation Law.

■ The law seems to be well settled that this notice by the employer to the Bureau of Workshop and Factory Inspection is necessary in order to start the one year statute of limitations. This rule was first announced by Judge Swiggart in the case of Southern Railway Company v. Grigsby, 155 Tenn. 285, 292 S.W. 3. See Oman, v. Delius, 162 Tenn. 192, 196, 35 S.W.2d 570; also, Trobaugh v. Harper, 191 Tenn. 409, 234 S.W.2d 829. The statute construed in the foregoing cases has been re-enacted in the present code. 50 T.C.A. § 1017.

■ In the opinion of the Court, the action is not barred by the one year statute of limitations.

The second and final issue as set forth in the pre-trial order is whether or not decedent's work caused or contributed to the accident that occurred on December 12, 1962 and resulted in his death two days thereafter.

Mrs. Whitehead testified that he complained with headaches for several days prior to his death; that he had chills and sweats at night; that when he came home in the evening he would complain about being worn out. He was in his 61st year at the time of his death. The hospital records show that he had been complaining of headaches, chills and fever for several days prior to his death.

Mr. Cecil Banton operated the shearing machine that deceased worked on. A motion picture of the machine, together with men handling the aluminum as it came off of the conveyor of the machine, was shown during the trial. The men started to work at 6:00 o'clock A.M. on the day of the accident. About 9:50 A.M., deceased stopped the machine at which time he was very pale. He stated to Mr. Banton. "I am sick." He did not speak another word after that time according to the witness Banton. At about that time he fell and the back of his head hit the floor. He was bleeding in the mouth and unconscious all the time after his spoken words.

At the time of the accident the machine ran about 220 feet per minute—meaning about 220 feet of aluminum passed through the conveyor per minute. Mr. Banton was of the opinion that if an employee was used to the work it was not "so hard." But he added that standing at the table waiting for the aluminum was hard especially if recesses were not taken.

The floor on which deceased worked was made up of wood blocks laid on top of concrete. Deceased had worked on the machine the last time for two years. On the morning of the accident he ate a sandwich when the machine was temporarily stopped for a rest break at 8:00 o'clock. He also went to the bathroom when the machine was stopped temporarily. Hence, he worked continuously from 6:00 o'clock in the morning with two short recesses until around 9:50 A.M., when he was stricken.

Homer Johnson worked at the other end of the table where deceased worked. He heard deceased say, "I am sick. I am blind as a bat. I can't see." He made these statements before he pushed the button to stop the machine. Mr. Johnson observed him as he fell, and the blood as it came out of his mouth. He agreed with Mr. Banton that the work of the deceased was not too bad about making a person tired, but he also agreed that if the employee stood on his feet for eight hours at or near the table he became tired.

Doctor Edward M. Kelman was the pathologist who did the post-mortem on the deceased. His heart was all right. His brain was heavy. There was a hemorrhage in the brain above the ears slightly backward. The skull was fractured in this area. There were about one hundred c.c. of clotted blood beneath the fracture. The blood came from the fracture. The fracture tore the vein. The fracture was depressed but the dura was intact. The hemorrhage could have caused softening of the brain, that is, softening in the basal ganglia area

of the brain. The thrombosis occurred in the ganglia area of the brain. Deceased's headaches indicated trouble in the brain. The thrombosis caused the fall. The thrombosis had been going on for some time. The doctor described it as cerebral thrombosis of the basal ganglia. He stated that thrombosis occurs when a person is inactive but that strain may cause hemorrhage of blood vessels. He was of the opinion that the thrombosis cut off the blood supply of the brain and caused deceased to fall.

Doctor L. E. Vinsant is a general practitioner. He agreed with Dr. Kelman that the cerebral thrombosis caused deceased to fall. He stated that the same things that cause arteries to constrict in the heart cause them to constrict in the brain. He also stated that a person is more likely to have a cerebral thrombosis while asleep because his blood runs slower.

Doctor Eidson Smith is a neurosurgeon. He stated that the fracture of the decedent's skull caused his death. He also stated that tension and fatigue would influence the thrombosis in the brain. He stated that work and fatigue would aggravate a thrombosis in the brain. He likewise stated that work would not cause cerebral thrombosis but that work sometimes accelerates cerebral thrombosis.

Doctor W. N. Dawson is a medical director of the defendant. He was called to the first aid station soon after deceased arrived and deceased was unconscious and vomiting. He had sustained an injury to the brain. Dr. Dawson referred to it as a cerebral vascular accident caused by the fall.

Doctor W. C. Crowder is an internist. He was of the opinion that the fracture of the skull caused deceased's death and that his work did not cause or accelerate the cerebral thrombosis. He stated that tension and fatigue could produce constriction of the arteries.

Doctor M. Frank Turney, a neurosurgeon, examined deceased on December 13, 1962, and was of the opinion that deceased could have died from the cerebral thrombosis or from the brain injury that he sustained as a result of the fall. He was of the opinion that work of the deceased did not cause his thrombosis. Dr. Turney stated that lack of blood supply to the basal ganglia causes dizziness. He also stated that activity has nothing to do with thrombosis.

The burden of proof was upon the plaintiff to show, first, that the deceased met with an accident while in the performance of his duties as an employee of the Aluminum Company; that the accident and resulting death arose out of and in the course of the deceased's employment.

The parties agree that the death of the deceased was caused from the fall that fractured his skull. The parties agree that the fall was an accident, but the issue is joined on the question, whether the fall was caused by his work or whether it was caused by the deceased's idiopathic brain condition that had nothing to do with his work.

Plaintiff says that the decedent's fall originated with his work and was an accident that arose out of his work. Defendant says that the fall was caused by decedent's cerebral thrombosis which has no causal connection with his work.

The Supreme Court of Tennessee has had for consideration accidents that resulted solely from idiopathic conditions and accidents which originated with the work of the employee but in which the idiopathic condition played a part. The case of Tapp v. Tapp, 192 Tenn. 1, 236 S.W.2d 977, involved a set of facts where the employee was making a delivery of hardware for an employer when he was suddenly seized with a coughing spell due to an asthmatic condition and as a result of the coughing spell he blacked out and the automobile ran into a ditch causing injuries. The Court held that the employee's case was covered by the Workmen's Compensation Act.

The Aluminum Company in this case says that the reason that the employee in the Tapp case was covered by workmen's compensation was that the accident occurred under the hazardous conditions of employment. The company says that

this case does not fall into the hazardous employment category, as there was nothing hazardous about the work of the deceased employee.

As previously indicated there is testimony in this record from some of the doctors that tension and fatigue cause constriction of arteries that serve the heart as well as those that serve the brain. Exertion and tension may very well bring on a heart attack to one who is afflicted with a diseased heart. The decedent was afflicted with a diseased brain in that one or more of the arteries in his brain, particularly the one that carries the blood to the basal ganglia region, had narrowed to the extent that the blood would not pass through to the area that it served.

■ The preponderance of the proof shows that the narrowing of this vessel was not caused by the work which the deceased did for the Aluminum Company but may have been brought about by one or more causes. One of the decisive questions here is whether there was any tension or fatigue caused by the deceased's work, and if so, did the tension or fatigue aggravate or accelerate or trigger the closing of the artery that caused the dizziness which in turn caused the deceased to fall to the floor.

There is testimony by one or more of the doctors to the effect that they would not have advised the deceased to have engaged in his regular work if they had known of the deterioration of his brain. The reasonable inference to be drawn from this testimony is that the work, whether it caused tension or fatigue, or both, aggravated or accelerated the restriction in the artery of the brain.

■ In the opinion of the Court, and the Court finds, that the deceased met with an accident while in the performance of his duties in that while working on or around his machine he became dizzy due to a cerebral thrombosis and immediately fell to the floor and fractured his skull and that the latter was the primary cause of his death.

■ In the opinion of the Court, and the Court finds, that the work of the deceased either aggravated or accelerated or triggered the cerebral thrombosis that caused the fall which resulted in his death. See: Nashville Pure Milk Co. v. Rychen, 204 Tenn. 575, 322 S.W.2d 432; Blair v. Aluminum Company, D.C., 217 F.Supp. 471, 474; Sweat v. United States Fidelity Company, D.C., 169 F.Supp. 155; Morristown Chest Company v. Morgan, 212 Tenn. 441, 370 S.W.2d 513; Tapp v. Tapp, supra.

We believe that one of the cases cited and relied upon by the defendant, namely, Cas Walker Cash Stores, Inc. v. Livesay, 385 S.W.2d 745, may be distinguished upon the facts from the case under consideration and, therefore, is not controlling of the present case.

Parties will prepare an order in conformity with the holdings of the Court herein.